[No. 769.]

## THE STATE OF NEVADA, RESPONDENT, *v.* M. BOROW-SKY, RELATOR.

MISDEMEANOR IN OFFICE—PUBLIC ADMINISTRATOR.—Every willful violation of his duty by a public administrator is a misdemeanor, punishable by a fine of not exceeding $2000 and removal from office.

IDEM—EXPIRATION OF TERM OF OFFICE.—It is a "misdemeanor in office" for a public administrator to embezzle money received *ex officio* after his term of office has expired.

IDEM—DUTY OF PUBLIC OFFICERS.—It is the official duty of every public officer at or after the expiration of his term of office, to pay over to his successor, or other proper recipient, all funds received and held by him in his official capacity, and a refusal to do so, on proper demand, is a violation of his official duty.

JURY OF ELEVEN MEN.—A defendant indicted for a misdemeanor may be tried by a jury of eleven men, if he consents to such a jury, and his consent is not a waiver of a jury trial.

THIS was an original application before the Supreme Court for a writ of *certiorari*.

The facts are stated in the opinion.

*Thomas Wren*, for Relator.

I. Did the district court have jurisdiction to try this case? It has jurisdiction to try certain misdemeanors punishable by fines exceeding five hundred dollars. Is this one of those cases? If it is not, the district court did not have jurisdiction to try it, and its proceedings are invalid.

The indictment is under a section of the act concerning the office of public administrator. (2 Comp. L., sec. 3029.)

What is a *willful misdemeanor in office?* The section of the statute does not define it. I do not find anywhere in the statute the acts charged in the indictment made criminal, nor do I find that they were criminal at common law.

According to the definition of a crime or public offense, as set forth in the statute (2 Comp. L., sec. 1675), no one is guilty of a crime or public offense unless he does some act the law forbids him to do, to the doing of which is annexed some one of the penalties enumerated in the statute, or omits to do something the law commands him to do, to which is annexed some one of said penalties.

To what act of the public administrator is a penalty annexed? To what omission to do an act commanded by law as public administrator is a penalty annexed? If there is none, then under the statutory definition of a crime or public offense Borowsky is not guilty and the indictment does not charge a crime. The district court only has original jurisdiction of certain misdemeanors. In order to ascertain whether the court has exceeded its jurisdiction by trying a case of which it does not have original jurisdiction this court has to examine the indictment. If it is a case in which the fine does not exceed five hundred dollars, the district court did not have original jurisdiction to try it, and the proceedings of the court should be held invalid. If upon inspection it should be found that no offense is charged, it would be equally fatal to the proceedings.

II. Does this indictment charge a crime or public offense of which the district court has jurisdiction? If the section of the probate act does create an offense, what acts constitute the offense? The section reads: "For any willful misdemeanor in office," etc. Does the indictment charge that Borowsky committed any act, or omitted to do any act, in office? "It is alleged that Borowsky was appointed and qualified as public administrator on the seventh day of May, 1873, and continued in office until the seventeenth day of December, 1874." It is not charged that during this time he was guilty of any breach of duty as public administrator. The offense charged, if it be an offense, is charged to have been committed not as a public administrator, not in office, but several months after he had retired from office, *i. e.*, on the second day of March, 1875.

III. The court did not have jurisdiction to try Borowsky with a jury of less than twelve jurors. (Const. of Nevada, art. 1, sec. 3; 1 Comp. L., secs. 1679, 1687; Burrill's Law Dict., title "Jury," 231.)

A jury must consist of twelve men; no other number is known to the law. (*Vaughn* v. *Scade*, 30 Mo. 600; Opinion of Justices, 41 N. H. 550; *Dixon* v. *Richards*, 3 Miss. (2 How.) 771; *Carpenter* v. *State*, 5 Miss. (4 How.) 163.)

True, it appears from the record that Borowsky consented to be tried by eleven jurors, but under the provision of the constitution and statutes cited above he could not waive this right.

The court exceeded its jurisdiction in passing sentence upon Borowsky upon a verdict of guilty rendered by a less number than twelve jurors. If the court had jurisdiction to try him with a jury of less than twelve jurors, it had jurisdiction to try him without any jury, notwithstanding the express language of the constitution that "the right of trial by jury shall be secured to all and remain inviolate forever," and that the right to waive it is only granted in civil cases, and the equally plain and emphatic language of the statute that "no person can be punished for a public offense except upon legal conviction in a court having jurisdiction." "No person can be convicted of a public offense, *tried by indict-*

*ment*, unless by the verdict of a jury (*i. e.*, twelve jurors) accepted and recorded by the court, or upon a plea of guilty," etc.

*J. R. Kittrell, Attorney-General,* for Respondent.

I. The mere fact that section 3029 of the compiled laws reads that "public administrators may be tried by indictment," implies that the trial must be had in the district court; for no other court in the state is competent to try a cause on indictment. The words "willful misdemeanor in office," must be construed to mean, and can mean nothing else, *willful misconduct during the incumbent's official term*, and such misconduct is, by the section of the statute itself, made a misdemeanor, punishable by fine not to exceed two thousand dollars, and removal from office.

It is generally the case that the misconduct of officials is covered up during their official terms, and remains undiscovered until after their official functions cease. Therefore, that clause of the statute relative to "*removal from office*," can cut no figure in any prosecution or proceeding of a criminal nature against a public administrator who has violated the law and abused his trust, if his term of office has expired. But I submit that it is competent at any time after the expiration of his term, provided the statute of limitations has not run, for the proper authorities to proceed against him criminally for any misconduct or misdemeanor of which he has been guilty *during the time he was in office*.

II. Had the court the power to try him under the indictment? or, in other words, had the court below jurisdiction to try this case? We think it had.

District courts have jurisdiction to try all misdemeanors punishable by fine in excess of five hundred dollars; and this being punishable, and having been punished by a fine of two thousand dollars, it cannot be disputed but what the district court had jurisdiction to try it, and only that court had the jurisdiction. Jurisdiction is the power to hear and determine; this is its general definition. Jurisdiction, as applied to a particular claim, case or controversy, is the power to hear and determine that controversy.

III. The only question which can be inquired into on *certiorari*, is whether the inferior tribunal had jurisdiction to do the act sought to be reviewed. (*C. P. R. R. Co.* v. *Board of Eq., Placer Co.*, 43 Cal. 365; 5 Nev. 317; 6 Nev. 95, 100; *Burnett* v. *Wallace*, 43 Cal. 25.)

I claim that the question respecting the trial of petitioner by *eleven* men as jurors, is not a matter touching the *jurisdiction* of the court below in any manner whatever; that what occurred during the trial of the case was merely an incident, in nowise affecting the subject of jurisdiction. The trial of the case with eleven jurors, and the judgment of the court pronounced on their verdict, were simply *irregularities* or mistakes of law committed in conducting the trial which the court had jurisdiction and authority to hold. Such irregularities or mistakes made by a court in the exercise of an admitted jurisdiction are not to be considered on a writ of review. (43 Cal. 367; 46 Cal. 79.)

By the Court, BEATTY, J.:

A writ of *certiorari* was issued out of this court upon petition of Borowsky, commanding the sixth district court to certify its proceedings in the case of the *State of Nevada* v. *M. Borowsky*. The petitioner was indicted by the grand jury of Eureka county for a misdemeanor in the office of public administrator. He pleaded not guilty; was tried, by his own consent, by a jury of eleven men; was convicted and sentenced to pay a fine of two thousand dollars, and to be imprisoned till the fine was paid, at the rate of one day's imprisonment for each two dollars of the fine.

As there is no appeal in this class of cases from the judgment of the district court, nor other plain, speedy and adequate remedy for an illegal conviction, there is no doubt that the petitioner is entitled in this proceeding to have the judgment against him annulled or modified if the district court has exceeded its jurisdiction; and he claims that it did exceed its jurisdiction in two ways:

First. In trying and convicting him upon an indictment which charges no offense, and therefore, of course, no offense of which the district court could have jurisdiction; and,

Second. In adjudging him guilty and imposing sentence without the verdict of a legal jury.

The indictment is founded upon the following provision of the law concerning public administrators: "For any willful misdemeanor in office, any public administrator may be indicted, tried, and, if found guilty, fined in any sum not exceeding two thousand dollars, and removed from office." (Comp. L., sec. 3029.)

It shows that Borowsky was the lawful incumbent of the office of public administrator of Eureka county from May, 1873, to December, 1874; that in January, 1874, he received, by virtue of his office, three thousand dollars and upwards of property and moneys belonging to the estate of Adam Hamilton, deceased, and that in March, 1875, "he did willfully, unlawfully, and corruptly appropriate to his own use of the moneys of said estate     *     *     *     two thousand one hundred and ninety-nine dollars and nineteen cents, and did then and afterwards willfully and unlawfully refuse to pay over said moneys upon the order of the district court.

The argument in behalf of the petitioner is that the statute upon which this indictment is founded does not define any offense, and, if it does, that the indictment does not charge the offense defined by the statute. To support the first proposition he says: A misdemeanor is a crime, and a crime is defined to be an act or omission forbidden by law and to which is annexed, on conviction, some definite penalty. (Comp. L., sec. 1675.) But there is no act or omission of a public administrator to which any penalty has been affixed by law, and consequently there is no such thing as a misdemeanor in that office. The fault of this argument, I think, consists in attributing to the word misdemeanor, as used in the statute, its technical sense of a species of crime. It is evident, I think, that it is used in its more comprehensive sense of misbehavior, misconduct, violation of duty; for otherwise the word "willful," by which it is qualified, becomes entirely superfluous. Every crime is necessarily willful, but misconduct, or violation of duty, is not. Taken in the latter sense, the word misdemeanor is properly qualified by the word willful; in the former signification, the

expression involves the worst sort of tautology. Besides, in the one case, the whole provision becomes utterly meaningless, while in the other the construction is plain and sensible. The statute makes a willful misdemeanor (in its popular sense of misconduct), a technical misdemeanor or crime by attaching the penalties of fine and removal from office. Its object was not to impose additional penalties in the case of misdemeanors already defined, but to make that criminal which before had not been so, by the ordinary form of attaching a penalty, and thereby forbidding it. Every willful violation of his official duty by a public administrator is, therefore, a misdemeanor, punishable by a fine of not exceeding two thousand dollars and removal from office. Of such offenses, it is not questioned that the district court has jurisdiction.

But does this indictment charge the offense defined by the statute? Petitioner argues that it does not, because it shows that his term of office had expired before the misappropriation of the money, and therefore it could not have been a *misdemeanor in office.* That the statute is intended only to apply to those who are incumbents of the office at the time of the commission of the offense he contends is proved not only by its language, but by the fact that one of the prescribed penalties is removal from office, which of course cannot be imposed upon one whose term has expired. I think, however, the argument is inconclusive. The language of the act is, "may be fined, etc., and removed from office." The latter part of the penalty of course could not be enforced if the incumbency of the office had expired before conviction, but that is no reason why the fine should not be imposed. If Borowsky, after the expiration of his term, had been indicted for embezzling money before its expiration, it would scarcely have been argued that the statute did not apply merely because he could not be removed from office. And yet the reason assigned would go as far to sustain that proposition as the other. This shows that, if the argument proves anything, it proves too much, and consequently that it proves nothing. The question, however, still remains upon the language of the act,

Is it a "misdemeanor in office" to embezzle money received *ex officio* after the term of the officer has expired? To my mind it seems clear that it is. It is one of the official duties of every public officer at or after the expiration of his term of office to pay over to his successor or other proper recipient all funds received and held by him in his official capacity, and a refusal to do so, on proper demand being made, is a violation of his official duty. The indictment in this case shows such a refusal, and charges it to have been willful. It therefore comes fully up to the statute, if "willful misdemeanor in office" means, as it clearly does, nothing more nor less than willful violation of official duty. This view is strengthened by the consideration that a public administrator is an officer who virtually continues in office an indefinite period after the nominal expiration of his term. His official duty is simply to administer upon estates, in which he is entitled to administration, according to law. (Comp. L., sec. 3025.) After his term expires he simply ceases to be entitled to take out letters of administration in new cases, but he continues to administer, or at least he continues officially chargeable in respect to the estates in which he has received letters, until he is regularly discharged by the district court. Until he is so discharged it is always his duty as an officer to pay over moneys on the order of the court (Comp. L., sec. 3027), and embezzlement of the money of an estate is such misconduct as authorizes the district court summarily to suspend his functions. (Comp. L., sec. 763.)

My conclusion, in view of these provisions, is, that the indictment does charge the petitioner with an offense within the jurisdiction of the district court.

The remaining question is, Did the court exceed its jurisdiction in pronouncing sentence upon the verdict of eleven jurors, the petitioner having consented to be tried by that number?

There is no doubt that he was entitled to be tried by a jury of twelve if he had demanded it. The question is whether his consent to be tried by eleven could authorize the court to pronounce sentence upon their verdict. If, as

his counsel argues, the verdict of eleven is the same thing as no verdict at all, it would seem to follow that the court exceeded its authority, for in that case an agreement by the defendant to be tried by eleven jurors would be equivalent to waiving a jury trial, and it seems to be implied in the language of the constitution (art. 1, sec. 3) and expressly enacted in the law (Comp. L., secs. 1679, 1687) that on the trial of an indictment a jury cannot be waived.   There is certainly much apparent and perhaps real force in the argument that a trial by eleven jurors is no jury trial, but there is very strong authority for holding the defendant estopped in a case like this from saying that it is not, and in my opinion it ought to be so held if there is any reasonable ground for such a decision.   To hold otherwise would seem to involve the conclusion that if a verdict of guilty does not convict, a verdict of not guilty does not acquit, and that in the latter case the defendant might be tried again perhaps after his witnesses had gone beyond his reach, and in a case perhaps where the very reason of his waiving a full panel of jurors was to prevent a postponement of his trial and the loss of important testimony.   These considerations, it is true, do not meet the argument, but they indicate the unjust and harsh consequences involved in the position contended for and the motives which may legitimately actuate a court in inclining to an opposite conclusion.

The conclusion reached by this court in *The State* v. *Mc-Clear*, decided during the last term, is that the right of trial by jury means the right to be tried by twelve *impartial* jurors.   That they should be impartial is just as essential to the constitution of the jury as that they should be twelve in number, and there is no principle upon which a defendant can be held capable of waiving the disqualification of a juror for bias, which will not include the power of consenting to a smaller number than twelve.   Yet it has been held in numerous cases in other states, and in the *Case of Anderson* (4 Nev. 265), in this state, that the defendant is bound by his waiver of that objection.   And where a juror has been properly challenged for cause, and the challenge erroneously overruled and the juror sworn, the error

seems to be cured by the refusal of the defendant to renew his challenge when offered the privilege by the court. (*Gardiner* v. *People*, 6 Parker Cr. R. 195.) These authorities have a bearing upon the question, but there are others more directly in point. The case of the *Commonwealth* v. *Dailey* (12 Cush. 80), was decided by Chief Justice Shaw, and is directly in point, to the effect that a defendant indicted for a misdemeanor may be tried by eleven jurors if he consents, and that such consent is not a waiver of a jury trial. The reasons given in the opinion and the authorities cited, fully sustain the decision. (See also 1 Metc. (Ky.) 365; 2 Id. 1; 2 Paine C. C. 578; 28 Ga. 576.)

The case of *Cancemi* v. *The People* (18 N. Y. 128), is opposed to the decision of Chief Justice Shaw, in Massachusetts, and is followed and approved in *Hill* v. *The People*, in Michigan (16 Mich. 354). But both of these were cases of murder, and the weight of authority seems to be that, in prosecutions for misdemeanors at least, the court may, by the defendant's consent, proceed to try him with less than the full number of jurors. I am satisfied that in so deciding there is no injustice done in this case, nor risk of injustice in others. It rests with the defendant to protect himself by insisting upon his right, or by simply not waiving it.

The proceedings under review should be affirmed, and it is so ordered.