[No. 1680.]

WILLIAM BELL, J. E. DAVIDSON, AND JAMES RUS-
   SELL, PETITIONERS, *v.* THE FIRST JUDICIAL
   DISTRICT COURT OF THE STATE OF NEVADA,
   IN AND FOR THE COUNTY OF ESMERALDA,
   AND HON. M. A. MURPHY, JUDGE THEREOF,
   RESPONDENTS.

1. OFFICERS—MALFEASANCE—REMOVAL—STATUTES—CONSTITUTIONALITY—PRO-
      HIBITION. Where petitioners were sought to be removed from office
      for malfeasance, under Comp. Laws, 1642–1645, authorizing the filing
      of a complaint by a private complainant, the hearing of the matter by
      summary proceedings, and declaring that, if an appeal is taken from
      an order of removal, the officer removed shall not occupy the office
      pending appeal, and it was claimed that such sections were unconsti-
      tutional, petitioners' remedy by appeal was not adequate, and they
      were therefore entitled to a determination of the constitutionality of
      the statute on writ of prohibition to restrain the further prosecution
      of the removal proceedings against them.

2. SAME—TITLE OF ACT—SCOPE. Act of March 12, 1873, p. 209, c. 121, secs.
      59–62 (Comp. Laws, 1642–1645), is entitled "An act relating to elec-
      tions," but provides that, in case any officer shall be guilty of mal-
      feasance, he may be removed by summary proceedings on complaint
      of a private prosecutor, whereupon his successor shall be appointed,
      and, in case an appeal shall be taken, the officer removed shall not
      exercise the rights of his office pending the appeal. *Held,* that since
      the trial of an officer after his election for malfeasance in office, his
      removal, and the appointment of his successor, has no proper connec-
      tion with the subject of elections, such sections were in violation of
      Const. art. IV, sec. 17, requiring each law to embrace but one subject
      and matter properly connected therewith, briefly expressed, in the
      title.

ORIGINAL PROCEEDING. Prohibition, on petition of Wil-.
liam Bell and others, against the District Court of the First
Judicial District, in and for the County of Esmeralda, and
Hon. M. A. Murphy, Judge thereof. **Writ allowed.**

The facts sufficiently appear in the opinion.

*P. M. Bowler, Jr.,* for Petitioners.

*Geo. S. Green,* for Respondents:

I. The history of this case is stated in petitioners' open-
ing brief. None of the objections urged against this pro-
ceeding are new ones. They have often been resorted to
before to impress courts with the futility of any attempt to

bring dishonesty to book, and to convince the· public that the miserable drag net of the law is too tight and yet too loose, its meshes too large and yet too small, and its whole fabric too tattered and torn and tangled and twisted to be effective in the capture of political squid or the official lobster. Verily "he doth protest too much" in assuming that the laws were framed in the interest of law breakers, totally ignoring the highest interests of the public; that public office is paramount to the public itself, the created greater than the creator, and the eggs wiser than the chickens. But fortunately all of these questions have been determined by the supreme courts of our sister states adversely to petitioners. It matters little whether the action is of a civil or criminal nature, but after a labored attempt to show that it is criminal, counsel seeks to apply to it the rule that "Every civil action shall be prosecuted in the name of the real party in interest." We think that the proceeding is entirely dependent upon statute and should be prosecuted as provided in section 1643 of the Compiled Laws, under which it was instituted. Moreover, the constitution clearly provides for the enactment of such a law for the removal of civil officers. "Provision shall be made by law for the removal from office of any civil officer, other than those in this article previously specified, for malfeasance or nonfeasance in the performance of his duties." (Const. art. VII, sec. 4, Comp. Laws, 133.)

II. It has been uniformly held by the Supreme Court of Idaho that the proceeding for summary removal of civil officers is a civil action. In *Ponting* v. *Isaman*, 62 Pac. 680, the court said: "This· is not a criminal action. It was expressly decided in *Rankin* v. *Jauman* (Idaho), 36 Pac. 502, 39 Pac. 1111, that a proceeding of this kind is not a criminal action. If it be a criminal action, then it would necessarily follow that the action must be prosecuted in the name of the state, and that the prosecution must be upon indictment by the grand jury, or upon information of the public prosecutor, after commitment by a committing magistrate, under the express provisions of our constitution. The object of the statute under which this proceeding is had is to protect the public from corrupt officials, not to punish the offender.

Under the provisions of section 9, article V of the constitution, and the provisions of section 4807, Rev. Stats., an appeal will lie to this court from the final decision of the district court on behalf of either party in a proceeding of this kind. To hold otherwise would be to overturn the theory upon which the court entertained jurisdiction in the following cases, to wit: *Rankin* v. *Jauman*, 39 Pac. 1111; *Hays* v. *Simmons*, 59 Pac. 182; *Hays* v. *Young*, 59 Pac. 1113; *Smith* v. *Ellis*, 61 Pac. 695; *Miller* v. *Smith*, 61 Pac. 824."

III.   Whether the action is civil or criminal the defendant has the right of appeal from the judgment, and prohibition will not lie. (Civ. Prac. Act, Comp. Laws, 1645; *Low* v. *Crown Point M. Co.*, 2 Nev. 77; *Walcott* v. *Wells*, 21 Nev. 47; *Strouse* v. *Police Court*, 24 Pac. 747; *Murphy* v. *Superior Court*, 24 Pac. 310; *People* v. *Hills*, 16 Pac. 405; *Powelsor* v. *Lockwood*, 23 Pac. 143; *Agassiz* v. *Superior Court*, 27 Pac. 49; *Mines* v. *Superior Court*, 27 Pac. 532; *State* v. *Jones*, 27 Pac. 452; *Ducheneau* v. *Ireland*, 13 Pac. 87; *Mancello* v. *Bellrude*, 11 Pac. 501; *People* v. *District Court*, 19 Pac. 541; *Walker* v. *District Court*, 35 Pac. 982; *Levy* v. *Wilson*, 10 Pac. 272; *Childs* v. *Edmunds*, 10 Pac. 130; *Rust* v. *Stewart*, 64 Pac. 222; *McDonald* v. *Agnew*, 55 Pac. 125; *State* v. *Superior Court*, 59 Pac. 505; *State* v. *Benson*, 58 Pac. 1066; *State* v. *Hogg*, 62 Pac. 143; *State* v. *Moore*, 62 Pac. 441; *White* v. *Superior Court*, 42 Pac. 471; *Leonard* v. *Bartels*, 4 Colo. 95; *Bellevue Water Co.* v. *Stockslager*, 43 Pac. 568; *State* v. *District Court*, 39 Pac. 749; *Tomboy Gold Mines Co.* v. *District Court*, 48 Pac. 537.)

IV.   The authorities cited by counsel completely overturn the argument that the proceeding must be prosecuted in the name of the state. (*Rankin* v. *Jauman*, 36 Pac. 502; *In re Marks*, 45 Cal. 644; *Triplett* v. *Munter*, 50 Cal. 644; *Smith* v. *Ling*, 68 Cal. 324; *Fraser* v. *Alexander*, 75 Cal. 147; *Woods* v. *Varnum*, 83 Cal. 46; *In re Stow*, 98 Cal. 587; *Crossman* v. *Lesher*, 97 Cal. 383; *Woods* v. *Varnum*, 85 Cal. 639; *Thurston* v. *Clark*, 107 Cal. 288; *Ponting* v. *Isaman*, 62 Pac. 680; *Smith* v. *Ellis*, 61 Pac. 695; *Rankin* v. *Jauman*, 39 Pac. 1111.) The authorities cited by counsel in his contention that a proceeding of this nature must be prosecuted by a criminal action

do not bear him out. In *Thurston* v. *Clark*, 107 Cal. 288–9, cited by counsel, the court said: "There are two methods of prosecution for wilful or corrupt misconduct in office provided by chapter 2. One is by an accusation in writing, presented by the grand jury. * * * The other method is the summary method provided by section 722 of the same chapter, *supra.*" As said by the court in *Fitch* v. *Board of Supervisors*, 122 Cal. 293: "It is thus apparent that the doors are left wide open by the constitution for the legislature to provide for the trial of municipal officers for misdemeanor in office in any way that body may see fit. Under the very terms of the constitution the power of the legislature in such matters is exclusive and supreme."

Nor do we think that sections 56 and 60 of "An act relating to elections" are in conflict with section 17 of article IV of the constitution of this state. Section 58 of said act has not, "in effect," by implication or otherwise, been declared "unconstitutional" by this court in the case of *State* v. *Sadler*, 25 Nev. 165–6, Cutting to the contrary notwithstanding. The "unconstitutionality" of that section was not questioned or determined, but merely construed. Sections 59 and 60 are no more "incongruous" to the title of the act than sections 52 to 57, inclusive, and they have been the settled law of the state for many years.

"It is only necessary in the title to express the principal subject embodied in the law, while the matters properly connected therewith are not required to be mentioned." (*Humboldt Co.* v. *Churchill Co.*, 6 Nev. 35; *State* v. *Davis*, 14 Nev. 442; *Klein* v. *Kinkead*, 16 Nev. 201, and cases cited; *State* v. *Commissioners*, 17 Nev. 96, 102.) It was definitely decided in *Humboldt Co.* v. *Churchill Co.*, 6 Nev. 30, that no statute will be annulled by a court on the ground of unconstitutionality unless it be clearly in conflict with the constitution, and a liberal construction of the constitution has always been followed in this state in favor of the presumed constitutionality of the statutes. We contend that this statute deals with "matters properly connected" with the "subject briefly expressed in the title," namely "elections"—of what? Obviously "elections" of officers. What else could they elect?

Prohibition is not an appropriate remedy to determine the constitutionality of law. "A question involving the consti tutionality of a statute should be determined only when it is impossible to dispose of a cause on its merits otherwise, and a court will be especially reluctant to investigate or deter- mine the constitutionality of a statute on preliminary motions or on applications for provisional remedies." (6 Am. & Eng. Ency. of Law, 1084–1085; *Havemeyer* v. *Ingersoll*, 12 Abb. Pr. N. Y. Sup. Ct. 301; *Morton* v. *Broderick*, 118 Cal. 482.) In the latter case Judge Henshaw, speaking to the question of the constitutionality of the act therein ques- tioned, said: "These questions are passed, not as being unimportant, but as being more appropriate on the appeal from the judgment."

"The unconstitutionality of a statute must be clear and manifest before a court should declare it, so that where any reasonable doubt exists as to its constitutionality it should be upheld." (6 Am. & Eng. Ency. of Law, 1085, and cases cited.)

"Every presumption is in favor of the constitutionality of a legislative enactment, and the judicial department will be justified in pronouncing it unconstitutional only when it becomes a manifest usurpation of power." (6 Am. & Eng. Ency. of Law, 1086, and cases cited.)

We think that the cases cited sufficiently refute the argu- ment that the prosecution in this case must be in the name of the state, and the complaint or accusation not being a "process," the only remaining contention does not apply. The right to be charged and accused by the grand jury, and the right to be prosecuted in the name and by the authority of the State of Nevada, are inconsequential rights to the defendants, if any rights at all. There is no showing that defendants have been deprived of a trial by jury (even though they have no right of trial by jury) or that they have been, will be, or can be compelled to answer, or to become witnesses against themselves in the action. The acts of the defendants far more certainly and unerringly lead to "mob violence" than the innocent provisions of sections 1642 and 1643 of the Compiled Laws, which have been the accepted

and unchallenged law of the land for more than thirty-two years. No honest man ever has or ever will fear the provisions of that statute, and it always has been, and ever will be, the purveyors of official prostitution who sing this little doleful jeremiad anent "constitutional rights."

*P. M. Bowler, Jr.*, for Petitioners, in reply:

I. Respondents' counsel concedes the truth of the facts contained in the petition and admits the correctness of the statement of facts constituting the history of this case. He makes two points in his brief, to wit: That prohibition is not the remedy, for the reason that petitioners have a plain, speedy, and adequate remedy in the ordinary course of law by appeal from the judgment. That the proceedings in the respondent court are entirely dependent upon the statutes of Nevada (Comp. Laws, 1643) and it is therefore immaterial whether the proceeding sought to be restrained is criminal or not. That the provisions of the section cited control.

II. To the first point we reply that petitioners have no plain, speedy, and adequate remedy in the ordinary course of law. The objection and motions of defendants in the *nisi prius* court having been overruled and denied, thereupon the court by order fixed a time certain for defendants therein (petitioners herein) to answer the accusation; also set a day for the trial thereof. There is no provision of the statute or common law authorizing an appeal from such ruling of the court. The orders made are not appealable. The petitioners must undergo a hearing "in a summary manner," and we use the statutory language; we use it advisedly because such is the statutory mandate, and indulging in the presumption that respondent will, as indicated by its ruling, proceed, it will do so in the manner provided, that is to say, summarily, without jury, therefore it is immaterial whether this case proceed to judgment in the respondent court; it can make no difference; the action would not be changed in any particular from its present legal status; it would be then, precisely as it is now, in the same situation. The legal status of this case as disclosed by the petition, which is admitted, shows that respondent is proceeding to, and will hear, as the statute prescribes in

a summary manner, the accusation, at the instance and in the name of an individual who has no interest in the matter, save such interest as has any other citizen of the community, charging petitioners with the crime of wilful and corrupt misconduct in office, the punishment for which, upon conviction, is removal from office. There is no other alternative—answer the complaint, plead not guilty, subpena witnesses, yet no provision for compelling their attendance, save as in a civil action, and that the action in the court below is not such has heretofore been demonstrated; proceed to trial or allow judgment to be taken as if by default. This is the precise condition we find the case. Petitioners have no plain, speedy, and adequate remedy, and it can make no substantial difference whether this case proceeds to judgment in the district court, and then by appeal to this court, so far as the legal status of the case is concerned. The same identical legal propositions involved are still undetermined; the unconstitutionality of the provisions of sections 1642 and 1643 would still remain to be heard and decided by this court. The case would be then, after a long, tedious trial, expensive, harassing and annoying, unsettled and undetermined, and as it is now, in the same condition, so far as the question of jurisdiction to hear and determine in the manner and form attempted.

III. The proceeding complained of is that facts are set forth charging defendants therein (petitioners herein) with that which materially concerns the public only, and based upon so-called law designed, intended, and calculated for the protection of the public, and which can be enforced and conducted for and only in the name and by authority of the state in its sovereign capacity, and not in the name and by the authority of an individual; that if the truth of the facts set forth in the accusation is to be established it can be done only by and in the name of the State of Nevada; that the validity of the proceedings had and to be had in the district court can be more speedily and adequately investigated and determined by petitioners' application for the peremptory writ of prohibition than it can in any other way; that to proceed with (what occurs to us) a farce of hearing and then

appeal is a vain, idle, and foolish method of determining the legal questions involved. (*Kilburn* v. *Law*, 11 Cal. 237; *White* v. *Superior Court*, 126 Cal. 247; *Ex parte Phœnix Insurance Co.*, 118 U. S. 610; *U. S.* v. *Peters*, 3 Dall. 121–129; *People* v. *House*, 4 Utah, 369.)

IV. If the respondent has not the right to entertain a case of the character and in the manner indicated by the conceded facts, a judgment upon the merits either way would settle nothing; the questions involved would still remain untouched. (*Levy* v. *Wilson*, 69 Cal. 105; *Grangers' Bank* v. *Superior Court*, 33 Pac. 1095; *Modoc Land Co.* v. *Superior Court*, 122 Cal. 216; *Siebe* v. *Superior Court*, 114 Cal. 555; *L. L. L. Mg. Co.* v. *District Court*, 38 Pac. 580; *South Carolina R. R. Co.* v. *Ellis*, 40 Ga. 87; *James* v. *Stokes*, 77 Va. 225; *State ex rel. Millard* v. *Judges Ct. App.*, 40 La. Ann. 771; *North Yakima* v. *Superior Court*, 30 Pac. 1053; *N. Bloomfield Gravel Co.* v. *Keyser*, 58 Cal. 315; *Bruner* v. *Superior Court*, 92 Cal. 240.) The last two cases cited above are illustrations of precedents established by courts in similar cases to this, and are instructive.

V. We strenuously contend that it is for this court to determine whether from the admitted facts there is or is not a conspicuous want of jurisdiction in the district court. The power of the district court to hear and determine is but a legal discretion, a sound discretion, governed and controlled by law, constitution, or statute; that is what is meant and understood by jurisdiction; and whenever the jurisdiction of a court is restricted and limited by law, constitution, or statute, there jurisdiction ceases; the court then and there has no power even to say that jurisdiction exists. The jurisdiction of any court at any time, in any proceeding, may be challenged, and if from the admitted facts, as it does here, it appears that the court has no jurisdiction, the action should be instantly dismissed, and if it is not, by a decision that it has jurisdiction, such decision is in violation of law and an abuse of legal discretion. As an instance of the correctness of our views as above expressed we invite attention to the Bruner case, *supra.* In that case the petitioner was indicted for a felony, the supreme court had the power to hear and

determine, that is to say, a strict legal discretion to try defendant for felony upon a valid indictment, and not otherwise. The supreme court therein held that the indictment was void, and though petitioner could by repeal be released from any judgment that might be rendered against him by the slow, tedious, expensive, harassing, and vexatious process of appeal, that the remedy was not speedy and adequate; that the court exceeded its jurisdiction and granted the writ. The character and sufficiency of the pleading upon which the respondent proposes to and will exercise jurisdiction over the petitioners and the subject-matter thereof is not to be determined by its name, not because the provisions of section 1643, *supra*, so provide, but from the facts alleged in it and the entire law applicable to such subject-matter, including the criminal practice act and the constitution of our state. When the facts stated in the accusation are substantially those which are required to and do support the commission of crimes committed by the party accused, material facts constituting a crime or crimes, which have been stated in ordinary or concise language, the complaint necessarily assumes a form as it does here, that of a criminal nature, founded upon a statute of penal character designed for the protection of the public. Therefore the court will consult the whole body of the law, constitutional and statutory, to determine the questions involved thereby and therein. The subject-matter of this proceeding is criminal in character; the provisions of section 1643 are penal, though found in an innocent election law; it is therefore immaterial where such provisions may be found; the place of their abode does not determine its character; the essence of the subject-matter is to exact faithful performance of official duty to protect the public and punish the offenders, and such is the intent and purpose of the provisions of section 1643, *supra*, which we are considering. It appearing from every standpoint from which the subject-matter of this action may be viewed that it is penal, of a criminal character, having been repeatedly so decided, the respondent has no jurisdiction thereof because of the constitutional objections noted in our opening brief, and petitioners are entitled to the absolute dismissal thereof,

and prohibition therefor will lie and is the only appropriate remedy for the relief demanded, notwithstanding there may be a remedy by appeal, which is not speedy and is not adequate.

VI.    "Each law enacted by the legislature shall embrace but one subject, which subject shall be expressed in the title." It will be perceived from a reading of the above constitutional requirement that all legislative enactments are restricted to but one subject and to such matters connected with that subject.    The title is thus restricted to a certain subject and the body of the act must likewise be restricted.    The title of the act in question restricts the subject to elections only.    The constitution studiously avoids saying anything about matters and things connected with the objects and purposes of the act, but only matters connected with the subject, with emphasis on the subject.    The subject is elections, the object and purpose of elections, obviously elections of officers, not the removal of them, for that is an entirely separate and distinct subject, and it cannot without torturing the language be referable to the removal of officers.    It is apparent that the only subject the legislature had in view was the election of officers, not the removal of them; to hold otherwise would in effect be saying that the legislature had two subjects before them, one to elect, the other to remove, separate and distinct acts requiring different methods of accomplishment; for the one, that of elections, there was an absolute, imperative necessity, while the other, removal, depended entirely upon a contingency rarely occurring.    The evident primary object, purpose, or subject, call it what you may, the legislature had in view, which is manifest by reference to the title of the act, was to provide ways and means for the selection of the officers to carry on and conduct the government by the qualified voters of the state.    By the title of the act the legislature gave notice to that effect, and to none other, and, as remarked, no lawyer would consult an act so entitled in the investigation of crime of malfeasance, misfeasance, nonfeasance, or any other crime listed in the catalogue of crimes; neither would he consult such a law if inquiring for the duties of officers as prescribed by law.    Suffice it to say that object, purpose, and intent of the provisions of sections 1642,.

1643, *et seq.*, are in no way connected with the subject of the act as entitled. (*State* v. *Silver, supra; State* v. *Hallock*, 19 Nev. 384; *State* v. *Hoadley*, 20 Nev. 317; *State* v. *Com. Washoe Co* , 22 Nev. 400.)

VII. The caption of this part hereof is a plain require- ment of the constitution, the power from which the legisla- ture and the courts derive authority, which should not be frittered away. The object of the requirement, as, in fact, is also the purpose of every constitutional provision, is to protect the rights of the people, to prevent fraud, delusion, and deception, to prevent vicious legislation under the guise of a sugar-coating. And if constitutional provisions and requirements are to be applied and enforced at all, they must be held mandatory, and by no fair intendment can "An act relating to elections" be considered to include or cover legis- lation having no necessary or proper connection with the crimes of malpractice or malfeasance in office, or prescribing the duties of officers and defining punishment for violations thereof. The act is broader than its title, and the provisions herein assailed, by no fair or reasonable intendment, are indicated by its title.

VIII. "Provision shall be made by law for the removal from office of any civil officer, other than those in this article previously specified, for malfeasance or misfeasance in the performance of his duties." (Const. art. VII, sec. 4.) Coun- sel for respondent contends that the above constitutional pro- vision is a grant of unlimited and unrestricted power to the legislature; that the power of the legislature is exclusive and supreme. In fact, such was the opinion of Garoutte, J., in *Fitch* v. *Board of Supervisors*, 122 Cal. 293, in his specially concurring opinion, in substance and effect saying that while "provision shall be made by law for the removal from office of any civil officer for malfeasance or nonfeasance in the per- formance of his duties," such law must be made in conformity with and under limitations and restrictions elsewhere imposed by the constitution; not that the legislature is supreme and that it has exclusive power in such matter, but, as was con- tended in the oral argument, that the constitution, like a statute or a contract, must be considered in its entirety, each

provision thereof given effect, and, from a consideration of the whole, ascertain its meaning and intent. The opinion of Garoutte, J., while assuming to concur, in reality dissents, and therefore cannot be considered influential or controlling. We agree with counsel for respondent in that the proceeding sought to be prohibited is entirely dependent upon the statute (Comp. Laws, 1643), but we contend that the provisions thereof are dependent for validity upon the legislative restrictions imposed by the state constitution, as expressed in art. IV, sec. 17, art. VI, sec. 13, art. I, secs. 3, 8.

By the Court, NORCROSS, J.:

This is an original proceeding to obtain a writ of prohibition restraining and prohibiting respondent, the district court above named, and Hon. M. A. Murphy, judge thereof, from further proceeding, other than to make an order of dismissal, in a certain action in said court pending, entitled "A. Summerfield, Complainant, *v.* William Bell, J. E. Davidson, and James Russell, Defendants. Accusation." The issuance of the writ is demanded upon the grounds, first, "that said court has no jurisdiction of the parties, or the subject of said action"; second, "that said court has no jurisdiction of the parties, or of the subject of said action in the manner and form therein assumed to be exercised by said court."

The defendants in said action, petitioners herein, are regularly elected, qualified, and acting officers of the said county of Esmeralda, as follows: The said William Bell and James Russell are the justice of the peace and constable, respectively, of Goldfield township, and the said J. E. Davidson is the district attorney of the county. The action sought to be prohibited by this proceeding was instituted by the complainant, A. Summerfield, a citizen and taxpayer of said county, for the purpose of removing said petitioners from office for alleged malfeasance. The proceeding was brought under the provisions of sections 59 to 62 of an act entitled "An act relating to elections," approved March 12, 1873 (Stats. 1873, p. 209, c. 121; Comp. Laws, 1642–1645), which sections read as follows:

"SEC. 59. If any person now holding or who shall here-

after hold any office in this state, who shall refuse or neglect to perform any official act in the manner and form as now prescribed by law, or who shall be guilty of any malpractice or malfeasance in office, shall be removed therefrom as herein prescribed.

"SEC. 60. Whenever any complaint in writing, duly verified by the oath of any complainant, shall be presented to the district court, alleging that any officer within the jurisdiction of said court has been guilty of charging and collecting any illegal fees for services rendered or to be rendered in his office, or has refused or neglected to perform the official duties pertaining to his office as prescribed by law, or has been guilty of any malpractice or malfeasance in office, it shall be the duty of the court to cite the party charged to appear before him on a certain day, not more than ten nor less than five days from the time when said complaint shall be presented, and on that day, or some subsequent day not more than twenty days from that on which said complaint is presented, shall proceed to hear, in a summary manner, the complaint and evidence offered by the party complained of, and if, on such hearing, it shall appear that the charge or charges of said complaint are sustained, the court shall enter a decree that said party complained of shall be deprived of his office, and shall enter a judgment for five hundred dollars in favor of the complainant and such costs as are allowed in civil cases.

"SEC. 61. It shall be the duty of the clerk of the court in which such proceedings are had to transmit, within three days thereafter, to the governor of the state, or board of county commissioners (as the case may be) of the proper county, a copy of any decree or judgment declaring any officer deprived of any office under this act; and it shall be the duty of the governor or such board of county commissioners (as the case may be) to appoint some person to fill said office until a successor shall be selected or appointed and qualified; and it shall be the duty of the person so appointed to give such bond and security as are prescribed by law and pertaining to such office.

"SEC. 62. In case judgment of the district court, as herein

provided, shall be against the officer complained of, and an appeal taken from the judgment so rendered, the officer so appealing shall not hold the office during the pending of such appeal; but such office shall be filled as in case of a vacancy."

It is contended by petitioners that the foregoing sections of the act, under which the said proceedings were instituted, are violative of the state constitution, and hence void, and that therefore the court had no jurisdiction in the premises. Upon the other hand, counsel for respondent takes the position that prohibition is not an appropriate remedy to determine the constitutionality of an act or provisions thereof, and that therefore this proceeding should be dismissed, without passing upon the merits of the legal questions presented. Unquestionably this proceeding would be improper, if petitioners have a plain, speedy, and adequate remedy in the ordinary course of law; but no authorities are cited by counsel that go so far as to hold that an appellate court will refuse to grant relief by prohibition simply because to do so would necessitate the passing upon a constitutional question.

In the case of *Walcott* v. *Wells*, 21 Nev. 51, 24 Pac. 367, 9 L. R. A. 59, 37 Am. St. Rep. 478, which was a proceeding in prohibition, it is manifest from the majority opinion of the court that a constitutional question would have been passed upon if necessary to a determination of the case, while the dissenting opinion of Belknap, J., was predicated upon his view of the unconstitutionality of the act therein brought in question.

The case of *Ex parte Roundtree*, 51 Ala. 42, referred to in the *Walcott* v. *Wells Case*, *supra*, was a proceeding wherein a writ of prohibition was issued to the judge of the fourth judicial circuit of Alabama to prohibit him from proceeding in a case in the law and equity court of Morgan County; the issuance of the writ being based upon the unconstitutionality of the act creating the court.

Among other cases in which the constitutionality of statutes have been passed upon in proceedings in prohibition may be cited the following: *Levy* v. *Superior Court*, 105 Cal. 600, 38 Pac. 965, 29 L. R. A. 811; *Connecticut River R. Co.* v.

*Franklin Co.*, 127 Mass. 50, 34 Am. Rep. 338; *McInerney* v. *Denver*, 17 Colo. 302, 29 Pac. 516; *Sweet* v. *Hulbert*, 51 Barb. (N. Y.) 312.

In the case of *Walcott* v. *Wells*, *supra*, this court said: "The writ of prohibition is an extraordinary remedy, and should be issued only in cases of extreme necessity. Before it should issue, it must appear that the petitioner has applied to the inferior tribunal for relief. The object of the writ is to restrain inferior courts from acting without authority of law in cases where wrong, damage, and injustice are likely to follow from such action. It does not lie for grievances which may be redressed, in the ordinary course of judicial proceedings; by appeal. It is not a writ of right, but one of sound judicial discretion, to be issued or refused according to the facts and circumstances of each particular case. Like all other prerogative writs, it is to be used with caution and forbearance, for the furtherance of justice, and securing order and regularity in judicial proceedings in cases where none of the ordinary remedies provided by law are applicable. The writ should not be granted, except in cases of usurpation or abuse of power, and not then, unless the other remedies provided by law are inadequate to afford full relief. If the inferior court has jurisdiction of the subject-matter of the controversy, and only errs in the exercise of its jurisdiction, this will not justify a resort to the extraordinary remedy by prohibition."

It appears from the petition herein that petitioners applied to the lower court for relief, and that the questions herein presented were urged upon that court upon motions to quash and to dismiss the proceedings. If the proceedings in the lower court would be void because of the unconstitutionality of the sections of the act under which it is instituted, I think it is a case for the proper interference of this court by prohibition, unless it appear that there is another plain, speedy, and adequate remedy. If decision is rendered against petitioners in the proceeding in the lower court, a decree is entered removing them from office, and judgment for $500 in favor of the complainant may be imposed, as well as costs, as in civil cases. If appeal is taken from such judgment, no

matter how meritorious the appeal may be, there is no way by which the judgment, at least so far as the decree of removal is concerned, may be stayed pending the appeal; for the statute particularly provides that an appellant "shall not hold the office during the pending of such appeal." Petitioners are charged with gross misconduct—acts which are cognizable as crimes and punishable as such; in fact, malfeasance in office itself has all the attributes of crime. These accusations, grave as they are, are not, under the sections quoted, required to be made under the solemnity of an investigation of a grand jury and presented by a body of that character, but may rest upon the accusation of "any complainant." After summary hearing and a judgment and decree which may impose a great financial hardship, the accused is deprived of holding office and of receiving its emoluments pending the appeal, and the duties of the office are performed and the salary enjoyed by another person appointed as in the act provided. Not only this, but in a case like that of the district attorney, his appointed successor may become his legal prosecutor.

If the entire proceedings are without authority in law, and void because of the unconstitutionality of the sections of the act providing for this mode of procedure, certainly the remedy to be obtained by the slow process of appeal, which could only follow a vain, fruitless, and perhaps expensive, trial, could not be considered an adequate remedy. But more injurious to the defendant than loss of office and money would be the obloquy fastened upon him by such a decree, which an appeal in such a case could not remedy. It is hard to conceive of a greater legal wrong which might be imposed upon a person charged with a grave and serious offense than to compel him to undergo trial by a court or under a procedure wholly void in law. Even if guilty, his conviction would not be a bar to further trial before a competent court and under a lawful proceeding. If innocent, he would be subject to possible conviction, against which he never could obtain adequate relief; for if the lower court had no jurisdiction to consider the merits of the case, the appellate court would not, and all that could properly be accom-

plished by an appeal in such a case would be a dismissal of
the cause, with no opportunity for a new trial, or a further
chance to overcome the effect of the wrongful conviction.
For cases of this character, no other remedy could be ade-
quate, and reason and justice dictate the restraining of such
a trial by writ of prohibition. (*Bruner* v. *Superior Court*,
92 Cal. 267, 28 Pac. 341; *People* v. *Spiers*, 4 Utah, 395, 10
Pac. 609, 11 Pac. 509.)

Are the sections of the "act relating to elections" under
which the proceeding was instituted unconstitutional? It is
urged by counsel for petitioners that they are in several par-
ticulars, and the following specifications are made wherein
the organic act of the state is declared to be violated:
The subject of the sections in question is not mentioned in
the title of the act, and has no proper connection with the
subject that is mentioned, "elections," but, upon the con-
trary, is foreign thereto, in violation of article IV, section
17; that the proceeding, in reality being a prosecution crim-
inal in its nature, can only be prosecuted in the name of and
by the authority of the state, and the authorization of a prose-
cution in the name of an individual is violative of article VI,
section 13; that the authorizing of such a proceeding other-
wise than upon presentment or indictment of a grand jury is
violative of article I, section 8; that the provision requiring
a summary proceeding deprives the accused of the right of
trial by jury, in violation of article I, section 3.

All of the constitutional questions specified have been very
ably presented by counsel, but I shall only discuss the first
mentioned, for I deem it clearly decisive of the case, making
it unnecessary to pass upon the other interesting questions
submitted.

The purpose of section 17 of article IV of the state consti-
tution, which provides that "each law enacted by the legis-
lature shall embrace but one subject, and matter properly
connected therewith, which subject shall be briefly expressed
in the title," etc., has been so frequently considered by this
court and so well settled that it would accomplish no useful
purpose to enter upon a further discussion of a matter so
thoroughly covered by former opinions. As was said in the

case of *State* v. *Stone*, 24 Nev. 310, 53 Pac. 497, "that a compliance with this provision of the constitution is essential to the validity of every law enacted by the legislature has been so often decided by this court that it is not worth while to cite the cases." The subject of the act. in question is "elections." Its purpose and object is the orderly electing of public officials by the qualified voters of the state. The trial of an officer, after he has been so elected, for malfeasance in office, his removal, and the appointment of his successor because of such removal, has no proper connection whatever with the subject of elections. But counsel for respondent says: "Sections 59 and 60 are no more 'incongruous' to the title of the act than sections 52 to 57, inclusive, and they have been the settled law of this state for many years." Sections 52 to 57, inclusive, relate to contests for members of the legislature. A comparison of sections 59 to 62, inclusive, with sections 52 to 57, inclusive, of the act in question, only serves to show more clearly the distinction between what matters have a proper connection with the general subject of the act and what have not. It is manifest that the purpose of an election contest is to determine who has been legally elected in case of controversy. Such contest necessarily relates to the election. Its ultimate object is to determine which of the contesting parties has been duly elected. While it may result in determining that the person holding the office has not been elected thereto and should be ousted therefrom, and that the contestant, or person for whom the contest is instituted, should be invested with the office, such ouster upon the one hand and investiture upon the other is based primarily upon the true result of the election. The removal of an officer for malfeasance in office has no necessary relationship to the question of his election. Probably in the great majority of cases the malfeasance in office, like the malfeasance charged against petitioners, has not even the remotest relationship to the election of the officer. If the office is an elective one, the election at which the officer became entitled to hold the office is a thing of the past before the malfeasance is committed. An officer appointed to fill a vacancy existing in an elective office may as readily

commit a malfeasance in office as he could had he been elected to the office, and so an officer holding an office that is only appointive may be just as liable to commit such an offense. The object of legislation like that attempted to be accomplished by the sections of the "act relating to elections," herein in question, is to protect the public from corrupt and neglectful officials by removing them from office. (*Thurston* v. *Clark*, 107 Cal. 288, 40 Pac. 435; *Ponting* v. *Isaman* (Idaho) 62 Pac. 680.) That this purpose has no proper relationship to that of elections, is too clearly manifest to require any extended discussion.

Counsel for respondent argues, however, that by reason of the provisions of section 4 of article VII of the state constitution, the legislature has power to enact legislation for removal of officers guilty of malfeasance or nonfeasance in office in whatever manner it sees fit, and that therefore the sections of the "act relating to elections," herein in question, having been enacted in pursuance of this provision of the constitution, are valid. The constitutional provision referred to is as follows: "Provision shall be made by law for the removal from office of any civil officer, other than those in this article previously specified, for malfeasance or nonfeasance in the performance of his duties." While the framers of the constitution recognized the importance of specifying in the organic law of the state a provision requiring the legislature to enact laws for the removal of all officers guilty of malfeasance or nonfeasance in office, other than those whose removal was specified in the constitution to be accomplished by impeachment, it was never intended that such law or laws could be enacted differently from the method prescribed for the enactment of laws generally. Under the constitutional provision mentioned, the legislature is free to provide whatever proceedings for the removal of guilty public officers it deems most advantageous for the public good, so long as it does not in such enactment violate other constitutional provisions. There is nothing in the constitution itself indicating any other purpose, and reason does not dictate why there should be any exception in the case of this character of a law.

While the conclusion reached is that the sections of the act

under which the proceedings sought to be prohibited were instituted relate to a subject foreign to that expressed in the title of the act in which they are found, and that hence they are void, it is proper to note that the effect of this decision is not to hold invalid all provisions of law enacted for the trial of those charged with, and the punishment of those found guilty of, malfeasance or nonfeasance in office. Some of the acts relating to particular county officers contain provisions for the indictment and removal from office of the official who may be found guilty of a misdemeanor in office. (*State* v. *Borowsky*, 11 Nev. 119.) The act relating to officers generally contains many provisions definitive of offenses thereunder and providing punishments therefor. The general criminal practice act of this state provides in its first section that "a crime or public offense is an act or omission forbidden by law, and to which is annexed on conviction: * * * Fourth, Removal from office." (Comp. Laws, 3986.) Section 63 of the act last mentioned provides that "an accusation in writing against any district, county, or township officer, for wilful or corrupt misconduct in office, may be presented by the grand jury of the county for which the officer accused is elected or appointed." The sections immediately following (Comp. Laws, 4038–4051, inclusive) provide for the hearing of objections to the sufficiency of the indictment, for a trial by jury, for judgment upon conviction of removal from office, and the right of appeal to the supreme court. Should these various provisions of law to which attention has been directed be deemed inadequate by the legislature to provide a sufficient remedy for the public against unworthy or corrupt officials, additional legislation upon the subject will doubtless be enacted.

The writ will issue as prayed for.