### PEOPLE v. MERCANTILE CO-OPERATIVE BANK.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. CORPORATIONS—DISSOLUTION—ATTORNEY GENERAL—DUTY TO PROCEED—RELATOR—NECESSITY.

New York Banking Law, § 18, provides that where it appears to the banking superintendent that any corporation is conducting its business in an unsafe manner, or that it is inexpedient that such corporation should continue longer in business, it is his duty to so report to the attorney general, who is then to take such proceedings as are necessary. Code Civ. Proc. § 1786, declares that an action to dissolve a corporation is to be brought by the attorney general for the people, when the conditions exist. *Held*, that where the superintendent of banking reported to the attorney general that a building and loan association was insolvent, and that it was unsafe for it to continue in business, it was his duty to take proceedings on the report of the superintendent of banking, without waiting for any relator.

2. SAME—BUILDING AND LOAN ASSOCIATION — INSOLVENCY — MISMANAGEMENT—SCALING DOWN AMOUNT DUE SHAREHOLDERS.

Where the examination of a building and loan association by the superintendent of banking disclosed its insolvency, and the deficit was caused by reckless and improper management, the directors cannot restore the solvency of the concern by scaling down the sum due shareholders, in the amount of the deficit, without the shareholders' consent.

3. SAME—DISSOLUTION—RECEIVER—DEPRECIATION OF ASSETS.

Where it appears that a building association's business was being run at enormous expense, in an unbusinesslike manner, and without proper regard for shareholders, and that, to render the concern solvent, the amount due shareholders must be reduced by half, an objection to the appointment of a receiver on the ground that it would largely depreciate the assets is not well taken.

Appeal from special term, Orange county.

Action by the people, by John C. Davies, attorney general, to wind up the Mercantile Co-operative Bank, a corporation. From an order appointing receivers, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, RUMSEY, PATTERSON, and O'BRIEN, JJ.

William Rand, Jr., for appellant.

W. E. Kisselburgh, Jr., for respondents.

RUMSEY, J. The defendant is a corporation organized on the 9th of October, 1889, under the authority of chapter 122 of the Laws

of 1851.   Its business operations extend, not only through the state
of New York, but in several other of the United States, and the nom-
inal amount of its transactions is very large.   By the general bank-
ing law (c. 689 of the Laws of 1892), chapter 122 of the Laws of 1851
was repealed; and all corporations which had been organized under
the provisions of that law were made subject to the provisions of
the banking law, and were placed, for certain purposes, under the
supervision of the superintendent of banks.   General Banking Law,
§§ 1, 2.   In the month of May, 1899, the superintendent of banks
began an investigation into the affairs of this corporation.   The in-
vestigation continued some time, and its result was made to appear
in the report of the examiner, which was filed in the office of the
state banking department on the 23d of September, 1899, and in
the official report of the superintendent of banks made to the attorney
general, both of which are by the banking law made presumptive
evidence of the facts stated in them, in all proceedings of this char-
acter.   Id. § 24.   By the report of the examiner it appeared that there
was an actual deficit in the assets of the company amounting to
$296,536.78.   The report of the superintendent to the attorney gen-
eral discloses the manner in which the business of the corporation
had been transacted, from which the superintendent inferred that it
was unsafe and inexpedient for the association to further continue in
business, and he reported to the attorney general that conclusion.
In pursuance of that report this action was brought, and upon a
hearing at a special term in the Second district the order appointing
the temporary receiver was made.   An appeal was taken to the ap-
pellate division of the Second department, but, it having been found
that two of the justices then members of that court had taken part
in the making of the order, the matter was transferred to this depart-
ment for determination.

The appellant insists, as its first objection to this order, that the
attorney general has no power to bring this action, or, in any event,
he has no authority to bring it without a relator.   By section 18 of
the general banking law, it is provided that if it shall appear to the
superintendent of banking that any of the corporations mentioned
in that section are conducting business in an unsafe or unauthorized
manner, or that it is unsafe and inexpedient for such a corporation
to longer continue in business, he shall report the facts to the at-
torney general, who shall thereupon institute such proceedings against
the corporation as are authorized in the case of insolvent corpora-
tions, or such other proceedings as the nature of the case may require.
The corporations referred to in section 18 are corporations which are
subject to the general provisions of the act.   Section 17.   Issue is
taken by the defendant with the conclusion that the corporation is
insolvent, and with the determination of the superintendent that
it was unsafe and inexpedient for it to continue business.   It is said
that the corporation is not insolvent.   The facts with respect to this
matter are that upon an examination made in October, 1898, it was
made to appear that the assets of the corporation amounted to $1,021,-
589, and its liabilities to $1,017,871.39, so that upon the books of the
company it was solvent.   Another examination, made in May, 1899,

which lies at the foundation of this action, resulted in the conclusion by the examiner that the assets had been altogether too highly estimated; and, as a result of a reassessment, it was found that the assets were nearly $300,000 less than the liabilities. Among the liabilities of the corporation, however, it appeared that there was due to the shareholders $593,724.17. This was the sum to which they had become entitled because of their interest in the profits of the association, and which had been credited to them on the books up to that time. When it appeared from the report of the examiner that there was a deficit of something over $296,000, the directors undertook to make it good by scaling down $300,000 of the amount due the shareholders; and in that way the assets of the company, instead of being $296,000 less, were changed to become something over $3,000 more, than the liabilities. The defendant claims that this scaling down was within the authority of the officers of the corporation, within the case of People v. Bankers' Loan & Investment Co., 13 Misc. Rep. 221, 34 N. Y. Supp. 235, and that when it had been done the solvency of the corporation was restored. It appeared in that case that the loss sought to be made good by reducing the amount to be paid to the shareholders was the result of a depreciation in the value of property out of the state upon which loans had been made by the corporation. It can hardly be said that was the cause of the loss here, but it is fairly to be inferred that the losses of this corporation resulting in this great deficit were caused not only by the extravagant estimate made as to the value of its property, but by the reckless purchase of real estate for the profit of some of the directors themselves, and by the mismanagement of the affairs of the company by these directors. If that be so, the case is more within that of People v. Empire Loan & Investment Co., 15 App. Div. 69, 44 N. Y. Supp. 308, in which it was held that losses caused in that way could not be restored by scaling down the sums due to the members, and so re-establishing the solvency of the corporation, without the consent of those members. But it is unnecessary to determine in this case whether the solvency of the corporation was restored by the act of the directors in reducing the amounts to which the members were entitled, because it is quite clear from the report of the superintendent to the attorney general that the manner of conducting the business was such that it was unsafe and inexpedient to permit the corporation to longer continue in business, and that therefore the condition existed which required the attorney general, under section 18 of the banking law, to take such steps as are authorized to be taken against insolvent corporations. This proceeding is provided for in sections 1785 and 1786 of the Code of Civil Procedure. By the former section, when a corporation is insolvent an action may be brought to procure a judgment dissolving it; and, by section 1786, this action is to be brought by the attorney general in the name and on the behalf of the people. It is not left to the discretion of the attorney general whether he shall bring the action or not; but by section 1808 it is made the absolute duty of the attorney general, when the conditions exist, to cause it to be begun, or, as the section says, "he must bring the action accordingly." When the

superintendent of banks has reported to the attorney general that, in his judgment, it is unsafe and inexpedient for any corporation within his jurisdiction to longer continue in business, it is made the absolute duty of the attorney general to bring an action to dissolve it in such a proceeding as is prescribed by sections 1785 and 1786 of the Code of Civil Procedure. As the duty to bring the action is absolute, it follows that he cannot be compelled to wait until some one has seen fit, in the capacity of a relator, to make a complaint to him to set him in motion. Such is the necessary result of the provisions of the statute. There are no cases which construe the law otherwise. In the case of People v. Lowe, 117 N. Y. 175, 22 N. E. 1016, the court of appeals refused to pass upon the question whether it was necessary that there should be a relator in an action to dissolve a corporation organized under the law of 1851, brought by the attorney general. In the case of People v. Ballard, 134 N. Y. 269, 32 N. E. 54, however, it was expressly held that a relator was not necessary in such an action; and such, it seems, must be the necessary result of the statute.

This conclusion also substantially disposes of the second ground urged by the appellant,—that the case does not come within the provisions of paragraph 4 of section 1785 of the Code. It is not necessary that it should. Section 1785 is referred to, not as the source of the power of the attorney general to bring this action, but as prescribing the action which must be brought when the necessary facts required by section 18 of the general banking law appear. The result of the two statutes is as though there had been added to section 1785 a new subdivision prescribing that an action to dissolve a corporation should be brought whenever it should appear to the superintendent of banks that it was unsafe and inexpedient for a corporation to which the banking law was applicable to continue in business, and he should communicate the facts to the attorney general. But the appellant insists that the order appointing the receivers in this case should not have been made, because its necessary effect will be an enormous depreciation of the remaining assets of the corporation. We are not able to see the force of this objection. Whatever the assets of the corporation are worth, they certainly will not be less because they are placed in the hands of some one whose duty it is to administer and dispose of them among the people entitled to receive them. As the business of the company stood, it is quite clear that it was being conducted at an enormous expense, in an unbusinesslike way, and without due regard to the rights and interests of the persons entitled to share in the profits; and there was every reason why the business conducted in this manner should be brought to an end. There are to be considered, in such cases, not only the rights of the outside creditors, so called, but the rights of the large number of people who have been induced by their belief in the honesty of the officers of the corporation to put their money into it, in the expectation of making profits; and when it appears that the management of the company is such that it is necessary to take away one-half of those profits, to make good the claims of the outside creditors, it would seem that the purposes for which

the corporation was organized have failed. Such corporations are not organized solely to pay large salaries to their officers and to enable them to speculate on their own account, but for the purpose of permitting small subscribers to invest safely the money which they have saved; and, when it appears that the corporation fails in the very purpose for which it was organized, it certainly seems that steps should be taken by the attorney general to bring it to an end.

It was not only within the power of the attorney general, but it was his duty, to bring this proceeding; and the order should be affirmed, with costs to the respondents. All concur.