UNION SAWMILL COMPANY v. FELSENTHAL.

Opinion delivered February 3, 1908.

1. STATUTES—EQUALITY OF OPERATION—UNREASONABLE CLASSIFICATION.—The act of April 5, 1905, (pp. 357, 358), which is a copy of an act approved May 23, 1901, and enacts that it shall be unlawful for any corporation, company, firm or person to issue any scrip, token, draft, check or other evidence of indebtedness payable or redeemable otherwise than in lawful money, etc., is unconstitutional in providing that the act does not apply to coal mines when not less than twenty men are employed under the ground, being a discrimination not founded on good reason. (Page 352.)

2. SAME—REPEAL OF PRIOR ACT.—An unconstitutional statute which in general terms repeals all acts in conflict with it will not be held to repeal a prior valid act in conflict with it. (Page 352.)

3. CONSTITUTIONAL LAW—POWER OF LEGISLATURE OVER CORPORATIONS.—Though corporations derive their power to contract from the Legislature, and possess such powers only as are conferred by their charters, either expressly or as incidental to their existence, the Legislature cannot take from them the power to contract, but may regulate it when the interest of the public demands it, but not to such an extent as to render it ineffectual, or substantially impair the object of their incorporation. (Page 353.)

4. STATUTES—ALTERATION OF CORPORATE CHARTER.—The act of April 15, 1901, providing that all firms, companies, and corporations using coupons, script, punchouts, store orders or other evidences of indebtedness to pay for labor "shall, if demanded, redeem the same in the hands of such laborers or employee or other *bona fide* holders in good and lawful money," etc., is, so far as corporations are concerned, a reasonable exercise of power, reserved by art. 12, § 6, Const. 1874: "to alter, revoke or annul any charter of incorporation." (Page 354.)

Appeal from Union Circuit Court; *George W. Hays,* Judge; affirmed.

*Gaughan & Sifford,* for appellant.

The facts show that these store orders were never issued in payment of wages, and were never charged against the earnings of the employe when earnings were due. The statute claimed to have been violated, being penal, should be strictly construed. If the suit is intended to be based on act No. 101, Acts 1901, p. 167, it does not apply to the facts here, if, indeed, the statute has any meaning, because appellant was clearly not paying off its employees in store orders. Store orders are not mentioned in act No. 161 (Acts 1901, p. 310) which was re-enacted in 1905; but, if they were, that act would not reach this case, because the orders were not issued *in payment of wages due such laborers.* 28 L. R. A. 274. Where wages are not due, a voluntary agreement by the laborer to accept so much in merchandise, when the contract is not procured by coercion or fraud, is a valid contract for a valid consideration, and can be rightfully made in all cases when it is not affected by the police powers of the State. 70 Ark. 215.

2. The Legislature has no constitutional power to prohibit one from agreeing to accept merchandise in payment for his labor. 65 L. R. A. 584; 58 Ark. 407.

BATTLE, J. On the 5th day of October, 1906, A. & L. Felsenthal commenced an action against the Union Sawmill Company, before a justice of the peace, upon a large number of store orders executed by the defendant in denominations from five cents to one dollar, amounting in the aggregate to the sum of $5,269.46. They alleged in a written complaint filed by them that they were engaged in the mercantile business in the town of Felsenthal, Arkansas; that the defendant is a corporation, organized under the laws of the State of Arkansas, and is engaged in the manufacturing of lumber, and employs a large number of laborers, amounting to six or seven hundred, at its mill; that it has a regular pay day on the first Saturday after the 15th of each month; that in the management of its business it issues to its employees labor checks between pay days for labor performed at the mill; that they had, for value, and in the course of business, received from its employees the mill checks sued on; and that they presented the checks to the defendant on its regular pay days for payment, and it refused to pay the same.

The defendant answered and pleaded many defenses.

The issues in the action were tried before the court sitting as a jury upon the following agreed statement of facts:

"It is agreed that the plaintiffs are a firm and partnership doing a dry goods business at Felsenthal, about two and a half miles from the place of business of the defendant company; that they received the store orders in controversy from various parties for merchandise in their store at the face value of said orders; that the defendant, the Union Sawmill Company, is a corporation organized under the laws of Arkansas, engaged in the manufacture of lumber at Huttig, and has in its employ about six hundred men; that in connection with its mill it owns and operates a store carrying a stock of merchandise averaging about fifty thousand dollars in value, consisting of groceries, millinery, vegetables, fruits, shoes, hats, furniture, hardware and all other kinds of merchandise usually carried in general mercantile establishments; that said defendant company has an established pay day between the 15th and 20th of each month, at which time all of the laborers and employees of said mill are paid in full the balance which may be due them for labor performed during the prior calendar month. It is also agreed that a copy of one of the store orders in controversy is hereto attached and marked 'Exhibit A;' it being agreed that all of the orders embraced in this suit are similar except as to amount; the amount of these orders depend upon the request of the laborer and upon the amount which he at the time claims that he wishes to have in merchandise; and at the time of the issuance of said order it is the rule and custom, and so understood between the laborers and said defendant company, that said laborer be charged on his account with the amount of said store order, and that at the regular pay day it will be deducted from the amount due him, provided the amount due him exceeds his indebtedness. At times the parties to whom the store orders are issued have already worked enough so that the labor performed by them on the basis of their wages per hour would exceed the amount of the store order received, and this is the rule, though sometimes they issue to laborers whose labor at the contract price would not equal the amount of the orders received. No laborer or employee is required to ac-

cept the store orders. The store orders are received in the store of said company for merchandise at their full face value, and they are received for merchandise at their full value from any holder thereof, but the company does not redeem them in money from any one; but it is and has been the rule of said company in making settlements with the parties at Huttig who conduct a meat market, restaurant, and bowling alley, skating rink and confectionery, to receive the store orders which said parties may have taken as a credit, upon their accounts. These parties rent houses from the defendant company, and the company gets ten per cent. of the gross sales of the business in which they are engaged. The store orders are issued from the office of the company, which is about fifty yards from the store. There are about twelve or fifteen salesmen employed in the store. The employees and laborers are about equally divided between negroes and white men, and the town is so laid off that the negroes live in a different part of Huttig from where the white people live.

"When these store orders are issued to a laborer or employee, a receipt is given by him to the company, a copy of one of said receipts is hereto attached, marked 'Exhibit B' and it is agreed that all of the receipts taken are like the one here introduced except as to date, number, amount, the name.

"It is further agreed that A. & I. Felsenthal presented all of the store orders in controversy at regular pay days, within the time, and payment was demanded of the defendant company in cash, which was declined, the defendant company at the time telling them they were good only for merchandise at their face value at regular store prices. It is further agreed that the amount of the store orders in controversy aggregate $. . . . . . . . . . .

"It is further agreed that during these months covering the issuance of the checks or store orders in controversy the books of the defendant company show that there was paid the laborers from time to time cash which was deducted from the amount due them for labor at the regular pay day, this money being paid them before the regular pay day of the company; and when a man comes in and gives a good reason and explains the

necessity to have the money, the company advances him the money he asks for as an accommodation, but considers that it is under no obligation to do so.

"This 4th day of December, A. D. 1906.

"Smead & Powell,
"Attorneys for Plaintiff.
"Gaughan & Sifford,
"Attorneys for Defendant."

"Exhibit A.

A3, 500.                    Huttig, Ark., ...:.........., 190...
"To R. L. Boddie, Storekeeper.   ,

"Let bearer have merchandise to the amount of $1.00.

"Not good unless countersigned by F. W. Scott or A. G. Fish.

Union Saw Mill Co.,
By.................

(Reverse Side)
"Union Saw Mill Co.
$1.00.

"Exhibit B.

"No. A. 10687.

$1.00                Huttig, 'Ark., ...................., 190...
"Union Saw Mill Company.

"For value received charge my account one dollar ($1.00.)
......L ........................"

The plaintiffs recovered a judgment for $5,322.15, and the defendant appealed.

Appellees' right to recover involves the validity of the following act:

"Section 1. It shall be unlawful for any corporation, company, firm, or person, engaged in any trade or business in this State, either directly or indirectly to issue, sell, give or deliver to any person employed by such corporation, company, firm or person, in payment of wages due such laborer, earned by him, any scrip, token, draft, check or other evidence of indebtedness, payable or redeemable otherwise than in lawful money, at the regular pay day of such corporation, company, firm or person;

and if any such scrip, token, draft, check or other evidence of indebtedness be so issued, sold, given, or delivered to such laborer, it shall be construed, taken and held in all courts and places to be a promise to pay the sum specified therein, in lawful money, by the corporation, company, firm or person issuing, selling, giving, or delivering the same to the person named therein, or the holder thereof. And the corporation, company, firm or person so issuing, selling, giving, or delivering the same shall, moreover, be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than twenty-five dollars ($25) and not more than one hundred dollars ($100). And, at the discretion of the court trying the same, the officer or agent of the corporation, company, firm, or person issuing, selling, giving, or delivering the same may be imprisoned not less than ten nor more than thirty days.

"Section 2. If any corporation, company, firm, or person shall coerce or compel, or attempt to coerce or compel any employee in its, theirs, or his employment to purchase goods or supplies in payment of wages due him or earned by him, from any corporation, company, firm or person, such first-named corporation, company, firm or person shall be guilty of a misdemeanor, and upon conviction thereof shall be punished as provided in the preceding section.

"Section 3. If any such corporation, company, firm, or person shall, directly or indirectly, sell to any such employee, in payment of wages due or earned by him, goods or supplies at prices higher than a reasonable or current market value thereof in cash, such corporation, company, firm, or person shall be liable to such employee in a civil action in double the amount of the charges made and paid for such goods and supplies, in excess of the reasonable or current value in cash thereof; provided, that the provisions of this act do not apply to coal mines, when not less than twenty (20) men are employed under the ground.

"Section 4. That all laws and parts of laws in conflict herewith are hereby repealed, and this act take effect and be in force sixty (60) days after its passage." Acts of 1905, pages 357 and 358.

This act is a copy of an act of the same title, approved May 23, 1901. Are these acts valid?

They make an unlawful discrimination. They provide that none of their provisions shall "apply to coal mines, when not less than twenty men are employed under the ground." These provisos render them wholly void. The effect of such provisions is fully discussed in Ex parte *Deeds,* 75 Ark. 542.

These acts are unlike an act entitled "An act to prevent fraud in weighing and measuring coal and requiring the same to be weighed or measured before screening and for other purposes," approved April 10, 1899. Section one of that act makes it "the duty of every corporation, company or person engaged in the business of mining and selling coal by weight or measure, and employing twenty or more persons, to procure and constantly keep on hand at the proper place the necessary scales and measures, and whatever else may be necessary, to correctly weigh and measure the coal mined by such corporation, company or person." The court, in speaking of this section in *Woodson* v. *State,* 69 Ark. 525, said: "The obvious reason for the distinction in the first section is that it might be very burdensome to require the small operator to keep on hand an expensive set of scales and measures, when his situation might make this unnecessary; whereas the larger operator would usually need such scales and measures, and the requirement as to him would usually be less burdensome than it would be upon the small operator. This, it would seem, furnishes a justification for the distinction made by the Legislature in the first section." A similar distinction in a similar act for an additional reason was upheld in *McLean* v. *State,* 81 Ark. 304.

The acts of 1905 and May 23, 1901, being unconstitutional and repealing only the acts in conflict with them, leave the act entitled "An act to compel corporations to redeem script, punchouts or other evidence of indebtedness in cash," approved April 15, 1901, if valid, in full force. *Waters-Pierce Oil Co.* v. *Texas,* 177 U. S. 28; *Randolph* v. *Builders & Painters Supply Co.* 106 Ala. 501; Ex parte *Gayles,* 108 Ala. 514; *Santa Cruz Rock Pavement Co.* v. *Lyons,* 133 Cal. 114; *Stephens* v. *Ballou,* 27 Kan. 594; *State* v. *Judge of County Court,* 11 Wis. 50; 26

Am. & Eng. Ency. of Law (2d Ed.) 716, 717, and cases cited. That act is as follows: ·

"Section 1. That all firms, companies and corporations using coupons, script, punchouts, store orders or other evidence of indebtedness to pay other or its laborers and employees for labor, and shall, if demanded, redeem the same in the hands of such laborers or employee, or other *bona fide* holders, in good and lawful money of the United States; provided, the same is presented, and redemption demanded of such firm, company or corporation using same as aforesaid, at a regular pay day of such firm, company or corporation, to laborers or employees, or, if presented, and redemption demanded as aforesaid by such laborers or employee or *bona fide* holder, at any time not less than 30 days from the issuance or delivery of such coupon, script, punchout, store order or other evidence of indebtedness, to such employees, laborers or *bona fide* holders. Such redemption to be at the face value of said script, punchout, coupon, store order, or other evidence of indebtedness.

"Section 2. Provided further, That said face value shall be in cash the same as its purchasing power in goods, wares, and merchandise, at the commissary company's store or other depository of such company, corporation or firm as aforesaid.

"Section 3. Be it further provided, That any employee, laborer, or *bona fide* holder referred to in section 1 of this act, upon presentation and demand for redemption of such script, coupon, punchout, store order or other evidence of indebtedness aforesaid, and upon refusal of such firm, company, or corporation to redeem the same in good and lawful money of the United States, may maintain in his, her or their own name an action before any court of competent jurisdiction against such firm, company or corporation, using same as aforesaid, for the recovery of the value of such coupons, script, punchout, store order, or other evidence of indebtedness as aforesaid in section one (1) of this act."

Is this act valid?

The appellant is a corporation, and we need determine its effect only as to corporations.

Corporations derive their right to contract from the Legislature. They possess those powers or properties which the

charters of their creation confer upon them, either expressly or as incidental to their existence; and these, under the Constitution of this State, may be modified or diminished by amendment or extinguished by the repeal of the charters. But the Legislature cannot take from them the right to contract; for it is essential to their existence. It can regulate it, when the interest of the public demands it, but not to such an extent as to render it ineffectual, or substantially impair the object of its incorporation. The Constitution of this State, in reserving the right to amend or repeal, expressly provides that it may be exercised whenever, in the opinion of the Legislature, the charter "may be injurious to the citizens of this State; in such manner, however, that no injustice shall be done to the corporators." Article 12, § 6; *Leep* v. *Railway Company,* 58 Ark. 407; *St. Louis, Iron Mountain & Southern Railway Company* v. *Paul,* 64 Ark. 83; .*St. Louis, I. M. & S. Ry. Co.* v. *Paul,* 173 U. S. 404.

An act of the General Assembly of this State, approved March 25, 1889, provides: "Whenever any railroad company, corporation or person engaged in the business of operating or constructing any railroad or railroad bridge, or any contractor or subcontractor engaged in the construction of any such road or bridge, shall discharge with or without cause, or refuse to further employ, any servant or employee thereof, the unpaid wages of such servant or employee then earned at the contract rate, without abatement or deduction, shall be and become due and payable on the day of such discharge or refusal to longer employ; and if the same be not paid on such day, then as a penalty for such non-payment, the wages of such servant or employee shall continue at the same rate until paid," etc. In *Leep* v. *Railway Company,* 58 Ark. 407, it was held that this act, as to natural persons, is an invasion of the right, secured by the Constitution, "of acquiring, possessing and protecting property," but as to corporations it is a valid exercise of the right reserved by the Constitution "to alter, revoke, or annul any charter of incorporation." (Art. 12, § 6, Const. of 1874.) In *St. Louis, Iron Mountain & Southern Railway Company* v. *Paul,* 64 Ark. 83, the same was held as to corporations; and in the same case, on appeal to the Supreme Court of the United

States, it was held that it was not a violation of the Constitution of the United States as to corporations (173 U. S. 404). In these two cases the court said: "Whenever the charters of railroad companies become obstacles in the way of the Legislature so regulating their roads as to make them subserve the public interest to the fullest extent practicable, their charters are, in that respect, injurious to the citizens of the State, and can be amended as to defects in such manner as will be just to the corporators. For they are organized for a public purpose, and their roads are declared by the Constitution to be public highways, and they are made common carriers. They are clothed with public trust, and in any respect are expressly subjected by the Constitution to the control of the Legislature. There is no enterprise in which the public is so largely interested as it is in the successful and efficient operation of railroads. With the trust with which they are clothed is imposed the duty to serve the public as common carriers in the most efficient manner practicable. For this reason the Legislature may impose on them such duties as may be reasonably calculated to secure such results. Being created by statute, the Legislature may so change them by amendment as to make them subserve the purpose for which they are created. If the Legislature, in its wisdom, seeing that their employees are and will be persons dependent on their labor for a livelihood, and unable to work on a credit, should find that better servants and service could be secured by the prompt payment of their wages on the termination of their employment, and that the purpose of their creation would thereby be more nearly accomplished, it might require them to pay for the labor of their employees when the same is fully performed, at the end of their employment; and might require them to do so for the purpose of preventing that discontent produced by the non-payment of wages upon discharge which may lead to 'strikes,' and consequent injury to the interest of the public."

In *Woodson* v. *State*, 69 Ark. 521, the court held that "the act of April 1899, § 2, which provides that 'all coal mined and paid for by weight shall be weighed before it is screened, and shall be paid for according to the weight so ascertained, at such price per ton or bushel as may be agreed on by such

owner or operator and the miners who mined the same,' being prospective in its operation and interfering with no vested rights, in so far as it relates to domestic corporations engaged in operating coal mines, is a valid exercise of the power reserved by the Constitution of 1874, art. 12, § 6, to the State 'to alter, revoke or annul' corporate charters; the purpose of the act, as shown in the title and in the act itself, being "to protect a class of laborers against certain frauds which the Legislature supposed might be perpetrated upon them in the process of screening, when coal was not weighed until after it had been screened." A similar act was upheld in *McLean* v. *State,* 81 Ark. 304.

An act of the Legislature of the State of Tennessee provided: "That all persons, firms, corporations and companies, using coupons, scripts, punchouts, store orders or other evidences of indebtedness to pay their or its laborers and employees for labor or otherwise, shall, if demanded, redeem the same in the hands of such laborer, employee or *bona fide* holder, in good and lawful money of the United States: Provided, The same is presented and redemption demanded of such person, firm, company or corporation using same as aforesaid, at a regular pay day of such person, firm, company or corporation to laborers or employees, or if presented and redemption demanded as aforesaid by such laborers, employees or *bona fide* holders at any time not less than thirty days from the issuance or delivery of such coupon, script, punchout, store order or other evidences of indebtedness to such employees, laborers or *bona fide* holder," etc. In *Harbison* v. *Knoxville Iron Company,* 103 Tenn. 421, the Supreme Court of Tennessee held it to be a valid statute; the court saying, among other things: "The act before us is perhaps less stringent than any one considered in any of the cases mentioned. It is neither prohibitory nor penal; not special, but general; tending towards equality between employer and employee in the matter of wages; intended and well calculated to promote peace and good order, and to prevent strife, violence and bloodshed. Such being the character, purpose and tendency of the act; we have no hesitation in holding that it is valid, both as general legislation, without reference to the State's reserved police power, and also as a wholesome regulation adopted in the proper exercise

of that power." In the same case, on appeal, the Supreme Court of the United States held that the act does not conflict with the Constitution of the United States; citing *St. Louis, Iron Mountain & Southern Railway Company* v. *Paul,* cited above, to support its decision. *Knoxville Iron Company* v. *Harbison,* 183 U. S. 13.

The act under consideration has the same object as the Tennessee act and attempts to accomplish it by the same means, and upon principle and authority is a valid statute as to corporations.

Judgment affirmed.