[No. 1812]

THE STATE OF NEVADA, EX REL. JOHN SPARKS, ET AL., AS THE BOARD OF BANK COMMISSIONERS, RESPONDENT, *v.* THE STATE BANK AND TRUST COMPANY, ET AL., APPELLANTS.

1. STATUTES—SUBJECTS AND TITLES.

The act of March 26, 1907 (Stats. 1907, p. 229, c. 119), entitled "An act creating a board of bank commissioners, defining their duties, providing for the appointment of a bank examiner, prescribing his duties, fixing his compensation, providing penalties for the violation of the provisions of this act, and other matters relating thereto," though providing by section 10 for action by the attorney-general against a banking corporation, on the decision by the bank examiner and commissioners that it is unsafe for it to continue business, and that if the court shall find it unsafe, it shall appoint a receiver, does not contravene the Constitution art. IV, sec. 17, providing that each law shall embrace but one subject and matters properly connected therewith, which subject shall be expressed in the title.

2. BANKS AND BANKING—PROCEEDINGS FOR DISSOLUTION—PARTIES.

The state is a proper party plaintiff to the action which the act of March 26, 1907 (Stats. 1907, p. 232, c. 119), sec. 10, provides the attorney-general shall bring to prohibit the doing of business by a banking corporation reported by the bank examiner and commissioners to be unsafe.

3. STATUTES—SPECIAL LEGISLATION.

The act of March 26, 1907 (Stats. 1907, p. 232, c. 119), sec. 10, is not open to the objection of being special legislation because providing for appointment of receivers for insolvent banks only; banks being a subject which may be legislated on alone.

4. CONSTITUTIONAL LAW—JUDICIAL POWERS—DELEGATION.

The act of March 26, 1907 (Stats. 1907, p. 232, c. 119), sec. 10, providing that, on the determination by the bank commissioners that it is unsafe for a bank to continue business, they shall order the bank examiner to take possession of its property till the court makes an order, and the attorney-general shall bring action to enjoin it from transacting business, and if on the hearing the court finds it solvent, it may dismiss the action, and order the bank restored to possession of its property, does not confer judicial power on an executive board.

APPEAL from the District Court of the First Judicial District of the State of Nevada, Ormsby County; *F. P. Langan,* Judge.

Action by the State, on the relation of Governor John Sparks and others, constituting the Board of Bank Commissioners of the State of Nevada, against The State Bank and Trust Company and others. From an adverse judg-

ment, defendants appeal. **Affirmed.** Petition for rehearing.
**Denied.**

The facts sufficiently appear in the opinion.

*Summerfield & Curler, Cheney, Massey & Price,* and *S. S. Downer,* for Appellants:

I.  As a valid law in this state can "embrace but one subject and matter properly connected therewith, which subject shall be briefly expressed in the title," the first inquiry naturally is, What is the subject of the act in question?  When that is ascertained, the next inquiry will be whether that subject is expressed in the title.  An examination of the act in question shows that sections 1, 2 and 3 designate who shall constitute the board of bank commissioners, and authorizes the appointment by them of a bank examiner, naming his qualifications, fixing his salary and term of office.  Section 4 provides that the duties of the bank examiner shall be to furnish to every person, individual or corporation in this state doing a banking business, except national banks, a license to transact banking business; to receive reports of banks, to prepare and make demands for statements of banks, and to make semiannual reports showing the condition of all banks in this state.  Section 5 requires the bank examiner, at least twice a year, to make an examination of every banking corporation doing business in this state; to inspect the books, papers, notes, bonds or evidence of debt of banking corporations; to ascertain its condition, its solvency, its ability to fulfill its obligations, and to report the same to the bank commissioners.  Section 6 requires the bank examiner to examine under oath the officers, agents and servants of banking corporations with respect to the banking affairs and conditions of such corporation, and makes it a misdemeanor for any person to refuse to appear and testify before the bank examiner in regard to the discharge of his duties for such banking corporation.  Section 7 makes it a felony, punishable by fine or imprisonment, or both, for the bank examiner to neglect to report the insolvency or unsafe condition of any banking corporation in this state of which he has knowledge.  Section 8 prescribes the penalty of any corporation, firm or individual

for using the name or transacting business of a bank without having obtained a license provided for in section 4 of the act. Section 9 sets out in detail the kind of reports which the officers of the banking corporation shall make to the bank examiner whenever required by him so to do, which reports must show the exact financial condition of said banks. Section 10 provides what shall be done with the banking corporation after the bank examiner has found that it is violating its charter or the laws of this state, or is conducting its business in an unsafe manner, and the steps which he may take to correct it. This section also authorizes the bank commissioners to decide whether it is safe or unsafe for banking corporations to continue to transact business, and if they decide it is unsafe for any such corporation to continue to transact business, they shall authorize the bank examiner to take possession and control of the property of the bank, enjoining and prohibiting it from the transaction of any further business. This section also purports to give the court jurisdiction to hear the action so commenced, to determine whether the corporation is solvent or may safely continue its business, to dismiss the action, or to order the corporation into involuntary liquidation and issue an injunction restraining it from transacting its ordinary business, and direct the examiner to surrender the property to the receiver by the court appointed in such proceedings therefor. Section 11 refers to the reports of the examiner. Section 12 provides for the payment of the examiner's salary and fixes the license to be paid by the several banks for the privilege of carrying on their business, depending upon the amount of the bank's capital; and provides what shall be done with funds so collected. Section 13 prohibits the use of the word "bank," or word of similar meaning, by any persons except those engaged in business, or the granting of licenses to persons not so engaged, and fixes the penalty for violation of its terms. To properly ascertain what is the one subject of an act which must be expressed in its title, all the terms and provisions of the act shall be considered, and then, the one general object being expressed in the title, the act may properly embrace all instrumentalities requisite to the accomplishments of that object. The title of the act must express its

subject-matter, and not simply the instrumentalities by which the object of the act is to be accomplished. (*State* v. *Commissioners of Washoe County*, 22 Nev. 405, 406.)

II.   For what reason, then, is an act, the title to which is simply for the appointment of bank commissioners and bank examiner, fix their duties, salary, etc., sufficient to embrace provisions which determine when banks must suspend, when the attorney-general shall begin certain actions, what the court may do in those suits, how licenses shall be imposed, who liable to punishment for not carrying on the banking business as there required, how and when a receiver shall be appointed, the property of the bank seized, and judicial writs immediately dissolved?   This title could not have suggested or drawn the legislature's attention to the fact that provisions of such scope and importance were embraced in the body of the bill. Numerous instances, similar to these, will readily suggest themselves, and yet we are quite unable to see in what essential particular statutes of this character containing such provisions would be unlike the statute in question.   Had the title of this act been "An act regulating banks and banking," or words of similar meaning, many of these matters might be construed as properly connected with the title.   The legislature chose its own title.   That title defines the scope of legislation possible to be embraced therein.   The provisions essential to sustain this action are outside of any subject indicated in the title.   The courts are powerless to extend or enlarge the effect of a restrictive title, and this action must fall for want of valid statutory authority to support it.   The effect of a restrained and limited title to defeat provisions in an act, which might have been sustained under a title which was suficiently comprehensive to express the real subject of the act, has been enforced in the following cases from other jurisdictions: *Village of Fairview* v. *City of Detroit*, 113 N. W. 368; *Jones* v. *Mayor of Morristown*, 49 Atl. 440; *Rouse* v. *Thompson*, 81 N. E. 1109, 1112; *State* v. *Merchant*, 92 Pac. 890; *Cahoon* v. *Iron Gate L. I. Co.*, 23 S. E. 767; *Rajio* v. *State*, 6 S. W. 401; *Matter of Application of Paul*, 94 N. Y. 497; *Anderson* v. *Hill*, 20 N. W. 549; *Jersey City* v. *Elmendorf*, 47 N. J. Law, 283; *Commissioners of Madison County* v. *Baker*, 80 Ind. 374;

*Matter of Petition of Blodgett*, 89 N. Y. 392; *Dixon* v. *Poe*, 65 N. E. 518; *Henderson* v. *London Co.*, 135 Ind. 23, 34 N. E. 565; *State* v. *Young*, 47 Ind. 150; *Clark* v. *Board of Commissioners*, 39 Pac. 225; *People* v. *Congdon*, 43 N. W. 986; *State* v. *Folk*, 105 S. W. 733–735.

III.   The statute is invalid because it embraces more than one subject.   It creates two separate offices and defines their separate duties.   To create a board of bank commissioners and define its duties is the proper subject of the act.   It may be a part of the board's duties to appoint a bank examiner, but to define his duties, fix his salary, and authorize the imposition and collection of a license tax to raise a fund to pay him, is no part of the duties of the board of bank commissioners, nor properly connected therewith.   On the other hand, an act to create the office, providing for the appointment and fixing the duties and salary of a bank examiner is a proper subject for an act, but under that title there will be no authority to establish a board of bank commissioners, define its duties and determine its jurisdiction.   The two matters are of equal rank and each a proper and separate subject for legislative action.   The framer of this act apparently deemed it necessary to name both of the above subjects in the title.   The joining in one act of provisions creating two or more offices, and thereby offering opportunity for "log-rolling," is to sanction one of the evils which it was the very purpose of our Constitution to prevent.

IV.   Section 10 of this act is unconstitutional in that it attempts to delegate to an executive board judicial functions and powers in violation of the express inhibition contained in section 1 of article III of the Constitution of Nevada.   No more striking example of the exercise of a purely judicial function can be conceived than that of judging *ex parte*, without notice, opportunity to be heard, upon the mere report of the bank examiner, and even without that and upon only the personal knowledge of the bank commissioners that a private banking corporation is managing its private business unsafely, and ordering that it be disseized of, and ousted from the control of, its own property.   By the act it undoubtedly appears that the board of bank commissioners is only an executive

board. It is not legislative, and it is not judicial in its elementary composition. It is unquestionably true that it is competent for the legislature to enact a law delegating a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend, but it cannot go further than such determination and follow the same by a seizure of property and wresting its control from its owner. Upon the courts alone has this power been conferred, and the exercise of this function is in the highest sense judicial. "Whenever an act determines a question of right, or obligation, or of property, as the foundation upon which it proceeds, such act is to that extent judicial." (*Sinking Fund Cases*, 99 U. S. 761; *Wulzen* v. *Supervisors*, 101 Cal. 15; *Seattle* v. *Bellingham Co.*, 29 Wash. 491.)

V. By the express and positive terms of our Constitution the judicial power of the state is exclusively vested in courts, and not in persons. (Constitution, art VI, sec. 1; *Meagher* v. *County*, 5 Nev. 244; *Kilbourn* v. *Thompson*, 103 U. S. 168; *People* v. *Keeler*, 99 N. Y. 463; *Missouri Co.* v. *National Bank*, 74 Ill. 217; *In Re Pacific Railway Commission*, 32 Fed. 267.). The Constitution vests the judicial power in every instance, and the legislature in none. The legislature has no judicial power, and can confer none upon any person or tribunal. Under the Constitution it may establish courts, but it does not invest courts with judicial power. The Constitution alone can do that, for all judicial power comes from that instrument, and is vested by it in courts and judges. (*State* v. *Noble*, 118 Ind. 350; *People* v. *Maynard*, 14 Ill. 419; *People* v. *Bolton*, 55 N. Y. 50.) It is submitted because section 10 plainly attempts deprivation of possession, control and ownership of private property upon mere individual alleged knowledge, rumor, or report, and without giving the owner notice or opportunity to be heard or to protect his rights, it is the taking of property without due, or any, process of law, and for that reason it is violative of our organic law, and must fall before proper judicial attack. Appellants do not wish to be understood as contending that by due process of law is exclusively meant judicial process. The point in view is that whatever its nature it must be of such a character as to secure

the citizen against any arbitrary deprivation of his rights, whether relating to his life, his liberty, or his property. Our contention is there must be some process, not absence of any process.

VI. Said section 10 denies to appellants equal protection of the laws and therefore is in conflict with section 1 of article XIV of the amendments to the Constitution of the United States, and is consequently void and inoperative. The business of banking is a lawful business, and those engaged in it are entitled to the equal protection of the laws. That The State Bank and Trust Company is a corporation does not preclude it from claiming such equal protection. (*Santa Clara Co.* v. *S. P. Co.*, 118 U. S. 384; *Pembina Co.* v. *Pennsylvania*, 125 U. S. 650.) That the aforesaid section is discriminatory against bankers and banking corporations is self-evident. Why they should be subjected to summary disseizure of their property, while all the world goes free, can be attempted to be justified only upon capricious and whimsical foundations.

*R. C. Stoddard*, Attorney-General, and *Mack & Green*, for Respondent:

I. The title to the act is full, ample and complete. It embraces the subject of the act with the most specific particularity and minuteness of detail. It is conceded by appellants that the one general subject being expressed in the title, the act may properly embrace all instrumentalities requisite to the accomplishment of that object. This act does not attempt to regulate the practice of courts or to do anything save to announce a rule of law applicable to a certain state of facts, all of which are germane to the subject expressed in the title, but even if it did, it would not be unconstitutional for that reason, and, even if so much of the act as related to the practice of courts was unconstitutional, it would not destroy the equitable jurisdiction with which courts of equity are inherently invested. It is not necessary that the most perfect expression of the subject should be adopted. It is sufficient if the title does substantially express the subject. (*People* v. *Superior Court*, 100 Cal. 105; *People* v. *Coler*, 173 N. Y. 103; *State* v. *Crosby*, 99 N. W. 636.) It makes no difference how

many matters may be contained in the act so long as they are "properly connected with one general subject briefly expressed in the title." (*State* v. *Commissioners*, 22 Nev. 410; *Ex Parte Livingston*, 20 Nev. 387; *State* v. *Humboldt Co.*, 21 Nev. 235; *State* v. *Irwin*, 5 Nev. 120; *People* v. *Parks*, 58 Cal. 635; *State* v. *Ah Sam*, 15 Nev. 227.)

II.    This act applies to every part of the state and to the whole of the class falling within its operation, and therefore cannot be special. (*Holmes* v. *City of Multoon*, 11 Ill. 27; *Van Riper* v. *Parsons*, 29 Am. Rep. 210.) The law is not "local law," and it is not "special" if the classification which it makes is based upon intrinsic differences requiring different regulations. (*Rode* v. *Siebe*, 119 Cal. 518; *People* v. *C. P. R. R.*, 105 Cal. 576; *Youngblood* v. *Birmingham L. & S. Co.*, 95 Ala. 521.) The constitutionality of a similar classification has been many times affirmed. An act putting the assets of insolvent traders into the hands of a receiver is a general law and is constitutional. (*Allen* v. *Nusbaum*, 87 Ga. 470, 13 S. E. 635.)

III.    The attorney-general is authorized to proceed against the corporation alone and for the sole purpose in effect of winding up its business; in other words, he represents the interests of the people in a matter of public concern. (*Home Savings Bank* v. *Superior Court*, 103 Cal. 27; *Crane* v. *Pacific Bank*, 106 Cal. 70.)

IV.    Practically all of the objections to the constitutionality of the act here urged have been passed upon and determined adversely to the appellants by the Supreme Court of California in the case of *People* v. *Bank of San Louis Obispo*, 97 Pac. 306, based upon a statute identical with ours, and from which our statute was taken in its entirety.

*PER CURIAM:*

The appeal is from a judgment of the district court declaring that it was unsafe for the defendant The State Bank and Trust Company to continue business, ordering the bank into liquidation, enjoining its directors from transacting any of its business, appointing a receiver, and directing the bank examiner to deliver to the receiver all property of the bank. We have presented for consideration the constitutionality of an

act entitled "An act creating a board of bank commissioners, defining their duties, providing for the appointment of a bank examiner, prescribing his duties, fixing his compensation, providing penalties for the violation of the provisions of this act, and other matters relating thereto," approved March 26, 1907 (Stats. 1907, p. 229, c. 119).

Among other things this statute provides that the governor, secretary of state, and state treasurer shall constitute a board of bank commissioners, and this board shall appoint a thoroughly expert bank examiner, and it shall be his duty to examine the accounts and report the condition of all banks throughout the state; to prepare and furnish to every bank, banking firm, corporation, and company doing a banking business a license in the form prescribed by him, authorizing the transaction of a banking business; to furnish on demand to all banks blank forms of statements as may by law be required of them, twice in each year, and as much oftener as in his judgment it may be deemed necessary, and without previous notice to visit and make full examination of all banking corporations. Section 7 provides a penalty for the failure of the bank examiner to report to the bank commissioners the insolvency or unsafe condition of any banking corporation. Section 8 provides that no corporation, firm, or individual shall transact a banking business without the requisite license, and section 9 directs that banking corporations, including banks in liquidation or insolvency, whenever required by the bank examiner, shall make a report showing their exact financial condition.

The principal attacks made by the imposing array of counsel are directed against the title, as designated above, and section 10, which provides: "* * * If it shall appear to said examiner that it is unsafe for any such corporation to continue to transact business, it shall be the duty of such examiner to immediately report the condition of such corporation to the bank commissioners; and if the bank commissioners, either from the report of the bank examiner, or from their own knowledge, decide that it is unsafe for any such corporation to continue to transact business they shall authorize the bank examiner to take such control of such corporation, and

of the property and effects thereof, as may be by them deemed necessary to prevent waste, or diversion of the assets, and to hold possession of the same until the order of court hereinafter mentioned, and it is hereby made the duty of the attorney-general, upon being notified by the bank commissioners, to immediately commence suit in the proper court against such corporation and the directors and trustees thereof to enjoin and prohibit them from the transaction of any further business.   If upon the hearing of the case the court shall find that such corporation is solvent, and may safely continue business, it may dismiss the action, and order that the corporation be restored to the possession of the property.   But if the court shall find that it is unsafe for such corporation to continue business, or that such corporation is insolvent, said court shall by its decree order such corporation into involuntary liquidation, and shall issue the injunction prayed for, and shall cause the same to be served according to law, and shall order the bank examiner to surrender the property of the corporation in his possession to a receiver appointed by the court for the purpose of liquidation.   *   *   *"

It is claimed that this act is in violation of section 17, article IV, of our State Constitution, in that the subject of the act is not expressed in the title; that the statute is invalid because it embraces more than one subject; that the provisions of section 10 are in violation of section 20, article IV, of the Constitution, which forbids the passage by the legislature of local or special laws regulating the practice of courts of justice; that because the action is brought in the name of the state, on the relation of the bank commissioners, there is no proper party plaintiff; that section 10 of the statute is void, in that it attempts to delegate to an executive board judicial functions, in violation of section 1, article III, of the Constitution; and that this section of the act denies appellants equal protection of the laws, and is therefore in conflict with section 1 of the fourteenth amendment to the Constitution of the United States.

The main principles controlling these questions have been well-nigh settled by this and other courts.   That section 17, article IV, of the Constitution, providing that "each law

enacted by the legislature shall embrace but one subject and matters properly connected therewith," is mandatory must be conceded. In regard to this objection we need only determine whether this action and the decree of the district court relate to matters germane to the subject expressed in the title of the act, or to what is properly connected therewith. It appears to be admitted that if the title had simply specified that the act was one regulating or relating to banking, the statute might be sustained, although it is urged, in another division of the brief, that the act is void because it relates to more than one subject. If it does so relate, the part properly connected with the title would not be void, while the remainder might be open to rejection. If the different provisions of this statute could be deemed sufficiently connected under a title simply designating it as "An act relating to banking," we see no reason why they may not be considered so with a title which designates one or more of the matters to which the others are properly connected. Under the language of the Constitution no necessity appears for requiring separate acts, or even separate designations in the title, for all the different provisions in this statute.

The creation and specification of the duties of the board of bank commissioners, and the definition of their powers, is properly connected with the appointment and duties of the bank examiner, who is appointed by, and reports to, this board, and the same may be deemed true of the suit which the board is authorized to have brought through the attorney-general against any bank which is not solvent or in a safe condition to do business, and of the appointment of the receiver to whom the bank examiner is directed to surrender the property. We are unable to see that the suit and the appointment of a receiver are not connected with the duties of the board and the bank examiner and their duties in instituting the suit and surrendering the property to the receiver. Under the argument presented it could be claimed that, if the title of the act further provided that it was for the bringing of actions, and of the appointment of receivers against insolvent or unsafe banks, the title related to three or more matters not properly connected; or, if the title simply stated that

it was an act providing for the regulation and liquidation of
insolvent or unsafe banks, the creation of the bank commis-
sion and the appointment of the bank examiner were matters
relating to officers, and not germane to any provisions author-
izing suit against the bank.   Instead of allowing the legisla-
ture to provide for all these matters so interwoven in one act,
which seems most convenient and unobjectionable, the appel-
lant's contention, if sustained, would require one or more stat-
utes relating to this board, one or more relating to the bank
examiner, one or more relating to the attorney-general, and
one or more relating to the action and power of the court.

The act in California, containing provisions substantially
the same as those to which objections are taken here, is
entitled "An act creating a board of bank commissioners and
prescribing their duties and powers," approved March 24, 1903
(Stats. 1903, p. 365, c. 266).   It will be perceived that this
title is not as comprehensive as, and contains only a part of,
the reference embraced in our statute, and yet the court there
held that the provisions of the act related to, or were prop-
erly connected with, the subject embraced in the title, and
that it was not unconstitutional for other reasons, and in
*People* v. *Bank of San Luis Obispo*, 97 Pac. (Cal.) 307, said:
"It is claimed that the act is unconstitutional in so far as it
purports to give any authority to the attorney-general to
bring or prosecute this action, for the reason that 'the title of
the act does not mention duties, authority, or power of the
attorney-general,' and section 24, article IV, of the Constitu-
tion provides that every act shall embrace but one subject,
which shall be expressed in its title, and that any act shall
be void as to any subject embraced therein which is not
expressed in its title.   The title of the act of March 24, 1903,
is the same as that of March 30, 1878 (Stats. 1877–78, p. 740,
c. 481).   In *People* v. *Superior Court*, 100 Cal. 105, 34 Pac. 492,
section 11 of the act of 1878, corresponding to section 10 of
the act of 1903, providing for such an action by the attorney-
general, was assailed on various grounds; one being that the
title did not sufficiently express the subject-matter of said
section.   The court said: 'We think that the title of the act
sufficiently expresses the subject of the act, and is sufficiently

general in its scope. It is not necessary that the title to the act should embrace an abstract of its contents. (*Abeel* v. *Clark*, 84 Cal. 226, 24 Pac. 383; *Ex Parte Liddell*, 93 Cal. 633, 29 Pac. 251.)' We see no reason to doubt the correctness of this ruling. * * * As we have seen the act in terms provides that the court in such an action brought 'to enjoin and prohibit them from the transaction of any further business,' if it finds that the corporation is insolvent, 'shall order the commissioners to surrender the property * * * to a receiver appointed by the court for the purpose of liquidation in such proceeding,' etc. This authorized the court to appoint the receiver as a part of the relief sought by the action, in the event of a finding of insolvency, without any allegation of the nececessity therefor in the complaint. The appointment of a receiver for purposes of liquidation was a part of the method provided by the act for the winding up of the affairs of the corporation, and, under the terms of the act, necessarily followed the adjudication of insolvency."

The title "An act to provide for the incorporation of mutual fire insurance companies, and defining their powers and duties," was held sufficient to embrace, without particular mention, provisions for winding them up and for the appointment of a receiver. (*Wardle* v. *Townsend*, 75 Mich. 385, 42 N. W. 950, 4 L. R. A. 514.) Under the clause of the Kentucky Constitution, providing "no law enacted by the general assembly shall relate to more than one subject, and that shall be expressed in the title" (Constitution of Kentucky, art. II, sec. 37), the Supreme Court of the United States held that a provision directing the issuance of new bonds was germane to, and properly included in, an act authorizing counties "to compromise and settle with the holders" of certain indebtedness. (*Carter County* v. *Sinton*, 120 U. S. 517, 7 Sup. Ct. 650, 30 L. Ed. 701; *Montclair* v. *Ramsdell*, 107 U S. 155, 2 Sup. Ct. 391, 27 L. Ed. 431.) Other cases may be found in the note in 1 L. R. A. 362, and also in *People* v. *Bank*, 53 App. Div. 298, 65 N. Y. Supp. 766.

In *Ex Parte Pittman*, 31 Nev. 43, decided the early part of this year after mature consideration, we held that the prosperity of the country is largely influenced by public confidence

in its banking institutions, that the banking business is in a class by itself, that it may be regulated, and that it is of the highest importance to the public that it be regulated, by wise legislation. Our views regarding the propriety of the legislature passing laws limited to the banking business are so fully expressed, and are supported by citations from so many other courts, that little further need be said in this connection. After referring to cases in our own and other states sustaining our conclusions, we quoted with approval from Judge Cooley: "The legislature may also deem it desirable to prescribe peculiar rules for the several occupations, and to establish distinction in the rights, obligations, duties, and capacities of citizens. The business of common carriers, for instance, or of bankers may require special statutory regulations for the general benefit, and it may be a matter of public policy to give laborers in one business a specific lien for their wages when it would be impracticable or impolitic to do the same for persons engaged in some other employments. If the laws be otherwise unobjectionable, all that can be required in these cases is that they be general in their application to the class or locality to which they apply, and they are then public in character, and of their propriety and policy the legislature must judge."

In *State* v. *Exchange Bank of Milligan*, 34 Neb. 201, 51 N. W. 766, the court said: "The power of the legislature to prescribe the terms and conditions upon which a corporation or an individual may transact a banking business within this state will not be seriously controverted. The purpose of the act, viz., to protect depositors and insure solvent banking institutions, is not only within the constitutional powers of the legislature, but is certainly a judicious exercise of such power. The legislature has by this act not only prescribed the conditions upon which any corporation, firm, or individual may engage in the business of banking, but has provided that, in case of a violation of its provisions by a failure to comply with the conditions or terms imposed, the state may interfere by means of the agencies provided by law in order to protect those interested, and to prevent a diversion of the funds from the purpose to which they should be applied. Whether the application for a receiver to impound the funds of an insolvent bank

is addressed to this court or the district court, the effect is the same. It is an exercise of the sovereign power of the state for a purpose and in a manner plainly provided by law. It is suggested by counsel that the statute does not provide that the proceeding shall be in the name of the state. True, it is not in express terms provided that the State of Nebraska shall be the plaintiff, or that the application shall be on the relation of the state. The omission, however, is in our judgment unimportant. Whatever may be the form of the proceedings or the title adopted, it is the action of the state. The attorney-general in making the application is obeying an imperative command of the statute. He is manifestly the representative of the state as effectually for all purposes as in a civil action to recover money due the state."

Statutes regulating insurance and other lines of business have often been sustained. In *Ivy* v. *Western Union Tel. Co.* (C. C.) 165 Fed. 372, decided last November, considering the objection that because the act applied only to telegraph companies, and not to other corporations, it was class legislation, and violative of the provisions of the fourteenth amendment, the court said: "These objections are clearly untenable, in view of the numerous decisions of the courts. Whatever doubt might have existed at one time on this question has been removed by a uniform line of decisions of all courts, and especially the Supreme Court of the United States. Cases directly in point are: *Atchison, Topeka & Santa Fe Railway Co.* v. *Matthews*, 174 U. S. 96, 19 Sup. Ct. 609, 43 L. Ed. 909; *St. Louis, I. M. & S. R. Co.* v. *Paul*, 173 U. S. 404, 19 Sup. Ct. 419, 43 L. Ed. 746; *Fidelity Association* v. *Mettler*, 185 U. S. 308, 22 Sup. Ct. 662, 46 L. Ed. 922; *Farmers' & Merchants' Ins. Co.* v. *Dobney*, 189 U. S. 301, 23 Sup. Ct. 565, 47 L. Ed. 821; *Missouri Railway Co.* v. *May*, 194 U. S. 267, 24 Sup. Ct. 638, 48 L. Ed. 971; *Northwestern Life Ins. Co.* v. *Riggs*, 203 U. S. 243, 27 Sup. Ct. 126, 51 L. Ed. 168; *Bachtel* v. *Wilson*, 204 U. S. 36, 27 Sup. Ct. 243, 51 L. Ed. 357; *Bacon* v. *Walker*, 204 U. S. 311, 27 Sup. Ct. 289, 51 L. Ed. 499; *Ozan Lumber Co.* v. *Union County Bank*, 207 U. S. 251, 28 Sup. Ct. 89, 52 L. Ed. 195; *Heath & Milligan Co.* v. *Worst*, 207 U. S. 338, 28 Sup. Ct. 114, 52 L. Ed. 236; *Muller* v. *Oregon*, 208 U. S. 412, 28 Sup. Ct. 324, 52 L. Ed.

551; *Seaboard Air Line Ry. Co.* v. *Seegers*, 207 U. S. 73, 28 Sup. Ct. 28, 52 L. Ed. 108; and the following late decisions of the Supreme Court of the State of Arkansas: *Union Sawmill Co.* v. *Felsenthal*, 85 Ark. 346, 108 S. W. 217; *Arkansas Insurance Company* v. *McManus* (Ark.) 110 S. W. 797; *Ozan Lumber Co.* v. *Biddie* (November 2, 1908), 113 S. W. 796."

It is apparent that the contention that the state is not a proper party plaintiff, and that it has no grievance to be remedied, no property to be recovered, and no beneficial interest in the result of the action, cannot be sustained. The authorities cited, and what we have already stated, indicate that the requirement that the banking business be safely conducted is so essential to the prosperity of the people that it may be regulated, and actions for that purpose may be maintained by, and in the name of, the state.

It is claimed that by section 10 of the act the legislature has attempted to authorize the courts to appoint receivers of banking corporations by special enactments not applicable to other corporations or citizens. This contention is met also by the fact that, as banks are to such a degree connected with, and responsible for, the financial welfare of the state, they are subject to regulation, and therefore laws may be passed pertaining to them which are not applicable to other corporations or citizens generally. It is not necessary that the commissioners and examiner be authorized to investigate the affairs of all others doing business before banks may be examined or regulated. When the proceedings authorized against an insolvent or unsound bank have progressed to the institution of suit, and a showing is made that a receiver is necessary, no good reason appears why one may not be appointed in a special suit to settle and liquidate the affairs of the bank similarly and with the same results as if appointed under the section of the statute relating to the appointment of receivers generally.

As to the claim that the act attempts to confer judicial powers upon an executive board, and authorizes it to proceed *ex parte* without a hearing, the reply is that the appeal is from a decree made by the court after the parties affected had an opportunity to be heard and present their evidence. The taking over of the assets of the bank by the examiner to pre-

serve them until the parties can appear and the court determine the controversy is only a temporary holding in the nature of an attachment, and for the preservation of the property until the court can adjust the rights of the parties in interest. Appellants had an opportunity to present their defense upon the trial, to make their showing, and ask for relief under that part of section 10 which provides: "If upon the hearing of the case the court shall find that such corporation is solvent and can safely continue business, it may dismiss the action, and order that the corporation be restored to the possession of the property." Statutes regulating the banking business are of such public concern, and so generally upheld and enforced in different states, that the power of the legislature to enact these laws can hardly be questioned longer. We do not find that the provisions of the statute assailed are in conflict in any way with the State or Federal Constitution.

Holding these views, it is unnecessary to consider the motion to dismiss the appeal of some of the appellants, or the motion to dismiss the motion to dismiss.

The decree of the district court is affirmed.

## ON PETITION FOR REHEARING

*PER CURIAM:*

Counsel for appellants have filed a petition for a rehearing, in which it is contended that our former decision in this case is at variance with two recent decisions of this court, viz., *Bell* v. *District Court*, 28 Nev. 280, and *State* v. *Gibson*, 30 Nev. 353.

To hold that the act involved in this case is constitutional, we do not think has made necessary any different construction of the provisions of section 17 of article IV of the Constitution than that applied in former decisions of this court. Sometimes expressions may occur in an opinion not essentially necessary to its determination, and, taken alone, might be susceptible of too broad or too restricted a construction, but, viewed in the light of the entire decision, cannot be said to modify an established rule. The two cases, *supra*, we think are clearly distinguishable from the case at bar.

The gist of the opinion in *Bell* v. *District Court*, *supra*, is

contained in the following extract: "The subject of the act in question is elections. Its purpose and object is the orderly electing of public officers by the qualified voters of the state. The trial of an officer, after he has been so elected, for malfeasance in office, his removal, and the appointment of his successor because of such removal has no proper connection whatever with the subject of elections."

The case of *State* v. *Gibson* involved the constitutionality of section 2 of an act entitled "An act to provide for the appointment of stenographers upon the hearing of preliminary examinations before committing magistrates in this state, and to regulate the compensation therefor" (Stats. 1907, p. 59, c. 32), which reads: "When such report is made, the same, when transcribed and sworn to as aforesaid, shall be deemed a correct statement of the evidence and proceedings given and had therein, and shall be admissible in evidence on the trial of the case, as prescribed in section 151 of the criminal practice act of the State of Nevada." In that case we said: "An examination of the title to the act in question reveals that it has reference only to the appointment of a stenographer and fixing the compensation therefor. Nowhere in the title of the act is there any reference to the testimony being thereafter used as evidence, or at all. Section 2 of said act, therefore, clearly violates section 17 of article IV of the Constitution of our state, because the subject-matter is not embraced in the title of the act, nor can it be said that the subject-matter of section 2 is germane to the subject-matter defined in the title of the act." The above section was held, also, to violate other provisions of the Constitution not in question in the case at bar.

The contention of counsel for appellants that in this case we have departed from established precedents is clearly without merit. A few extracts from former decisions of this court will be sufficient answer to this contention.

In the case of *State* v. *Ah Sam*, 15 Nev. 27, 27 Am. Rep. 454, this court, by Beatty, C. J., said: "But in dealing with this particular objection to parts of statutes, which, as a whole, embrace but one subject of legislation, the courts of the different states have adopted an exceedingly liberal rule of

construction in favor of their validity. The decisions on this point are very numerous, but it would be unnecessary and unprofitable to attempt a review of them; for in scarcely a single instance is an attempt made to lay down any rule or principle more definite than is to be gathered from the remark of Judge Cooley (Con. Lim. 146) that 'there has been a general disposition to construe the constitutional provision liberally, rather than to embarrass legislation by a construction, whose strictness is unnecessary to the accomplishment of the beneficial purposes for which it has been adopted.' The 'beneficial purposes' designed to be accomplished by the provision in question are said to have been the prevention of 'surprise or fraud upon the legislature· by means of provisions in bills of which the titles gave no intimation, and which might therefore be overlooked, and carelessly and unintentionally adopted,' and to fairly apprise the public of the subjects of legislation under consideration by their representatives, in order that they might have an opportunity of being heard thereon by petition, or otherwise. (Cooley's Con. Lim. 142, 143.) It is not inconsistent with these purposes to give some slight enlargement to the literal meaning of the title of a law, and there are numerous precedents that will justify us in saying that the title of this act, 'to prohibit the keeping of places of resort,' etc., is substantially equivalent to 'for the suppression of places of resort,' etc. (Cooley's Con. Lim. 141–150, and notes.)"

In the case of *State* v. *Commissioners*, 22 Nev. 399, 407, this court, by Bigelow, C. J., said: "We have often held, and still hold, that the Constitution is to be liberally construed, to the end that there shall be no unnecessary hampering of legislation, but there is a wide difference between liberal construction and nullification, which would be the effect of deciding that an act, passed under a title so misleading as this, is, notwithstanding, a valid law. The section might as well be stricken from the Constitution at once as a' dead letter. This distinction is well illustrated by cases heretofore decided by this court. Those of *State* v. *Ah Sam*, 15 Nev. 27, 27 Am. Rep. 454; *Ex Parte Livingston*, 20 Nev. 287, and *State* v. *Board of Commissioners of Humboldt County, supra*, 21 Nev. 235, of which

we entirely approve, and which in our judgment contain nothing in conflict with what is here held, were all cases in which, by liberal construction, the court was unable to uphold the validity of the acts then under consideration; while, on the other hand, the cases of *State* v. *Silver, supra,* 9 Nev. 227, *State* v. *Hallock,* 19 Nev. 384, and *State* v. *Hoadley,* 20 Nev. 317, fell on the other side of the line, and, notwithstanding the rules of liberal construction, the acts then being reviewed were held to be unconstitutional."

See, also, *State* v. *Commissioners,* 17 Nev. 96, 102; *State* v. *Atherton,* 19 Nev. 332, 345; *State* v. *Commissioners,* 21 Nev. 235, 239.

The case of *Brooks* v. *People,* 14 Colo. 413, 24 Pac. 553, cited and quoted from in *State* v. *Gibson, supra,* may, and we think does, give a too restricted construction to the constitutional provision in question, and is not in entire harmony with the uniform liberal construction adopted by this and other courts generally. The rule laid down by the Colorado court in the Brooks case supported our contention, but went further and to an extreme which was not necessary to a determination of the Gibson case, the opinion in which, taken as a whole, is in line with the uniform views expressed by this court. The question presented in the Gibson case was practically identical with that in *State* v. *Commissioners,* 22 Nev. 399, *supra.*

The petition for rehearing is denied.